Parker C. J.
delivered the opinion of the Court. If printed votes are not written votes within a fair construction of the terms of c. 1, § 3, art. 3, of the constitution of the Commonwealth, the plaintiff’s vote was rightly rejected ; otherwise it ought to have been received, and the plaintiff is entitled to redress for the violation of his franchise.
In construing so important an instrument as a cosstitution, especially those parts which affect the vital principle of a republican government, the elective franchise, or the manner of exercising it, w*e are not, on the one hand, to indulge ingenious speculations, which may lead us wide from the true sense and *322 spirit of the instrument; nor on the other, to apply to it ich narrow and constrained views as may exclude the real object and intent of those who framed it. We are to suppose that the authors of such an instrument had a thorough knowledge of the force and extent of the words they employ, that they had a beneficial end and purpose in view, and that more especially in any apparent restriction upon the mode of exercising the right of suffrage, there was some existing or anticipated evil which it was their purpose to avoid.
If an enlarged sense of any particular form of expression should be necessary to accomplish so great an object as the convenient exercise of the fundamental privilege or right, that of election, such sense must be attributed. We are to suppose that those who were delegated to the great business of distributing the powers which emanated from the sovereignty of the people, and to the establishment of rules for the perpetual security of the rights of person and property, had the wisdom to adapt their language to future as well as existing emergencies ; so that words competent to the then existing state of the community, and at the same time capable of being expanded to embrace more extensive relations, should not be restrained to their more obvious and immediate sense, if, consistently with the general object of the authors and the true principles of the compact, they can be extended to other relations and circumstances which an improved state of society may produce. Qui hceret in 'litera hceret in cortice, is a familiar maxim in the law. “ The letter killeth, but the spirit maketh alive,” is the more forcible expression of scripture.
We will consider this question then under these several heads : —
1. What is the scientific force and meaning of the terms used in the constitution.
2. What was the object of its authors in the use of those terms.
3. What has been the practical construction and how far should it limit or restrain their force.
The first question may be easily settled, for there appears no difference of opinion among philologists. They all concur in giving an extended signification to the term “ writing ” or *323 “ written,” varying in their own phraseology, but not in their ideas. Thus,
Walker defines write, “ To express by means of letters, to compose.”
Johnson, — “To express by means of letters, to engrave, to impress.”
Webster, — “ To form by a pen on paper or other material, or by a graver on wood or stone.” And the word writing he defines, “ Any thing written or expressed in letters.”
A still more apposite authority exists in the system of penal law prepared for the State of Louisiana, by Mr. Livingston, which has been handed to me by Mr. Dunlap since the argument. In the book of Definitions, ch. 1, the word writing is defined thus : “Wherever the contrary does not appear from the context, writing not only means words traced with a pen or stamped, but printed or engraved or made legible by any other device.”
In the common and statute law of this Commonwealth and Great Britain, both now and at the time of making the constitution, the use of the word writing, to express instruments generally printed, was familiar. Thus a bond is a writing obligatory, though printed ; — a promise in writing, to avoid the statute of frauds, may be printed ; — the statute of Anne, respecting promissory notes, speaks of notes in writing, and yet nothing is more common than to see them in print.
In the convention of 1780 there were great scholars, lawyers, philologists, — John Adams, Caleb Strong, Sullivan, Par sons, with many other distinguished characters. These men made the constitution ; they knew the use and force of its terms ; they looked to the future as well as to the present, for the application of them. There is no reason to suppose they intended to restrict them to the mode of voting then only in use. Probably the comparatively little use of types at that time did not suggest their application to votes ; if it did, the convention were willing to let them be so applied; for the object they had in view would be as well answered by printed at by manuscript votes.
What was their object in requiring “ written votes,” is the next inquiry' This must be left in some measure to conjecture, *324 but a probable solution may be found in other provisions in the constitution, and in the history of the country antecedent to the forming of the constitution.
This requisition of written votes in the constitution is confined to the choice of representatives. The important election of governor, senators and counsellors, is left unprovided for in this respect, except by implication, and that implication does not exclude printed votes. The votes of all the different communities were to be sorted and counted, and a certificate of the result transmitted to a common focus, the secretary’s office, where they were to be examined and compared. This process necessarily requires tickets or ballots, so that there was no occasion to require expressly that the votes should be in Writing or in print.
There can be no ground to exclude printed votes for these state officers, for all that is required is, that they should be so given as that they may be sorted and counted. But in regard to the choice of representatives the case was totally different. The selectmen of each town determine the choice. If there were no express provision to the contrary, a choice might be made by nomination and hand vote, or viva voce, neither of which modes was thought calculated to insure an independent suffrage. The practice had been to elect many town officers by hand vote, and probably in some instances representatives had been so chosen. It became necessary therefore to prescribe that the choice should be made by ballot; but even the word ballot itself is ambiguous, and therefore it was required that representatives shall be elected by written votes. Now if writing was “to express by letters,” according to the lexicographers, which may as well and better be done by writing with types than in manuscript, no inference can be drawn from the terms employed, againsj the use of printed votes. Suppose one manuscript vote, and others copied from it by machinery, would these latter be illegal votes ? Suppose lithographic votes ; which was said to be the character of the one tendered by the plaintiff.
The whole apparent object of the framers of the constitution is attained by this mode of voting. They did not intend to require that each citizen should write his own vote ; that would *325 have been, in those days, to disfranchise a portion of the citizens. They did not expect that votes would not be prepared by the more busy in elections to distribute at the polls ; that can as well be done by manuscript as by printed votes. In short, no reason against printed votes could have suggested itself ; convenience being much in their favor, it being much easier to detect and strike out an unpopular name from printed than from manuscript tickets.
But it is said, and this is the third head of inquiry, that the uniform and constant use of manuscript ballots in elections amounts to a construction of the terms of the constitution, which ought now to be received as the only true one. This practice of a mode of voting, which is undoubtedly constitutional, founded in existing convenience, and never brought into competition with the use of printed votes, scarcely furnishes an argument against the latter. Where there are two legal or constitutional modes of performing a duty or exercising a right, the use of one for any length of time cannot render the other unconstitutional or illegal. It merely shows a preference of one over the other, or that one during the time of the practice is more convenient than the other. There has been no judicial inquiry into this subject before the present, though the question has been raised, and in such manner as to entitle the proceedings in regard to it to some attention.
In the year 1804, on the approach of the choice of electors of president and vice-president, it having been determined by the legislature that the choice should be by a general ticket through the Commonwealth, the selectmen of Boston, wishing to save their fellow-citizens the trouble of writing a long list of names and multiplying the lists by manuscript for the purposes of the election, proposed to the attorney-general and solicitor-general the question whether it would be lawful and constitutional for them to receive printed votes. The former officer, then a gentleman of great political experience and wisdom, having been a member of the convention which formed the constitution, gave a decided opinion in the affirmative, and repeated this opinion afterwards with cogent reasons in favor of it, there having been some misapprehension of it as first given. The solicitor-general gave no decided opinion, though from the *326 course of his reasoning it may be inferred that he was inclined against the measure. He merely recommended adherence to the old custom as the safest course for the occasion. It was a time of great political interest and excitement, and the selectmen concluded to act upon the old maxim, via trita via tuta. We think the opinion of the attorney-general was sound and ably supported ; and that much force may be added to it, from the fact that he was a member of the convention, and from what we know of his character and talents, we may say an active and influential member of that body.
The supposed inconveniences from the substitution of printed for manuscript votes, are probably in a great degree imaginary. It is said it may be the means of introducing caricatures, or libellous pictures upon the ticket, —but is it not quite as easy now ? The picture may be stamped, and names of candidates written over or under it, and the vote will be legal. It has been done, and probably will be again in times of fervid struggle. The legislature may, if it see fit, prevent this evil, by prohibiting the receiving of any ticket which has any thing upon it but the name and official designation of the candidate. It is said that votes may be printed and sent into the country for distribution in party times. But both parties having the same means, will neutralize each other on this point. Besides, there is a spirit of independence among the people in the country which will render any attempt to influence them by votes sent from the city dangerous to the party who shall use it.
We make no remark upon the several statutes which have been cited for the purpose of showing a legislative construction of the words “ written votes,” for they in fact show no such construction. The words used in the statutes are substantially the same as in the constitution, and therefore admit of the same construction.[1]
With regard to the revised code of New York laws, which provide for the writing or printing of votes, — it was well to remove all occasion of doubt, but it is not a just inference that *327 the legislative body of that State thought that without such provision, printed votes would be illegal.
For these reasons we think that the rejection of the tiff’s vote was illegal, and that judgment must be rendered against the defendants. Considering however that they acted in the honest discharge of their supposed duty, and in conformity to a long course of practice, and that the object of the suit is probably to obtain a judicial decision upon a controverted question arising under the constitution, the assessing of damages being left to us, we assess them at one dollar ; to which are to he added the costs of suit, if required.

 The words “ written ” and “ in writing ” may be construed to include printing, engraving, lithographing, and any other mode of representing words and letters; provided, &c. Revised Stat. c. 2, § 6, art 9.