## MARCUS A. DEVINE

*v.*

## BOARD OF COMMISSIONERS OF COOK COUNTY.

1. CONSTITUTIONAL LAW—*special legislation.* Designating counties as a class, according to a minimum population, which makes it absolutely certain but one county in the State can avail of the benefits of a law applicable to such class, can not but be regarded as a mere device to evade the constitutional provision forbidding special legislation.

2. A statute which, by its terms, can have application to but one county in the State, although purporting to be a general law, applicable to all counties having a certain population, is special legislation, and within the inhibition of the constitution on that subject.

3. STATUTES—*when repugnant, the later repeals the former.* Where there is a clear repugnance between two laws, and the provisions of both can not be carried into effect, the later law must prevail, and the former yield to the last expression of the legislative will.

4. SAME—*intended as a substitute for another, repeals the other.* A subsequent statute, revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former.

5. COUNTIES—*act of 1874 repeals all other laws in relation to.* The act of 1874, revising the law in relation to counties, is a complete revision or recasting of the whole law in relation to county affairs; and although it contains no express words repealing former statutes, it must be regarded as a repeal of all other laws on the same subject.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. LEAKE & VOCKE, and Mr. JOHN J. HERRICK, for the appellant.

Mr. J. M. ROUNTREE, Mr. J. N. JEWETT, and Mr. SIDNEY SMITH, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the 26th day of December, 1876, the board of commissioners of Cook county, by more than a two-thirds vote in the affirmative, passed a resolution authorizing the committee on

finance of such board to prepare bonds in sums of $500 and $1000 each, as the committee should determine, to the amount of $1,000,000, running twenty years, with interest at six per cent per annum, payable semi-annually, as provided by law, authorizing the board of commissioners of counties containing over one hundred thousand inhabitants, of which Cook county is one, by a two-thirds vote, to issue bonds for erecting necessary public buildings, for funding floating indebtedness, and for other purposes specified, and that such committee advertise for the sale of not exceeding $100,000 of such bonds, and submit proposals received to the board, for acceptance or rejection. It is sought to enjoin the action of the board of commissioners under that resolution, and the reasons assigned in support of the allegations of the bill are, first, the act of the General Assembly, of February 23, 1872, as amended, referred to in the resolution, is invalid, because it is in contravention with that clause of the constitution which forbids the passage of local or special laws; second, if valid when enacted it has been repealed by the general law upon that subject, either by implication, or by revision or recasting the whole law in relation to counties in a later act; and, third, before the board of commissioners can have any rightful authority to issue bonds for any purpose named in the resolution, they must submit the question of issuing such bonds to the legal voters of the county, at a general election.

Section 22, art. 4, of the constitution, provides, the General Assembly shall not pass local or special laws in certain enumerated cases, and among the subjects mentioned is, for " regulating county and township affairs." The act of 1872, as amended by the act of 1873, referred to in the resolution of the board of commissioners, and under which it was proposed to issue bonds for the objects indicated, is, by its terms, limited in its operation to counties containing over one hundred thousand inhabitants, and also as to the objects for which bonds may be issued, viz: "for erecting a court house on the site heretofore used for that purpose, and a jail and other necessary public buildings, for the use of said county, at such points as

may be selected,   *   *   and for the purpose of funding the floating debt of said county."

Giving to the words "local or special laws," as used in the constitution, their ordinary meaning, as contra-distinguished from "general laws," it must be admitted, the act under consideration comes within the definition of a special or private law. In Potter's Dwarris, the division of statutes noticed is that of general or public acts, and such as are special or private, and it is added, the most comprehensive, if not the most precise definition, is that given by Dwarris, "that public acts relate to the public at large, and private acts concern the particular interest or benefit of certain individuals, or of particular classes of men." Potter's Dwarris, 52.

But, independently of all definitions, regarding the words "local or special laws" in the sense they are commonly understood, the act in question, being one "regulating county affairs," comes within the inhibition of the constitution. Its very terms preclude it from having any application to any county except the county of Cook, for we take judicial notice, no other county in the State contains over one hundred thousand inhabitants, nor can it be expected, by any ordinary influx or increase of population, that any other county will have that population within the brief period fixed for the duration of this law, viz: within a period of six years from the time the act should take effect. No express words that could have been used by the General Assembly, could limit the operation of this law to the county of Cook more absolutely and definitely, than those employed. The circumstances attending its passage being matters of common notoriety, and, therefore, supposed to be within the knowledge of the court, all indicate it was intended to apply exclusively to the county of Cook. That it authorized issuing bonds for " the purpose of erecting a court house on the site heretofore used," and that it contained an emergency clause declaring the " recent destruction, by fire, of public buildings," are matters that had no reference to any other county containing over one hundred thousand inhabitants, if any existed, than the county

of Cook.   That it is a "local or special law," applicable only
to Cook county, is a proposition so plain it will bear no dis-
cussion, and unless its passage can be justified for some reason,
it is invalid.

The argument is, this statute is not, in terms, applicable to
a single county, or to any specified number of counties, to the
exclusion of others, but is general, and alike applicable to all
counties in the State, imposing the condition upon each and
all alike, of having the requisite population before the powers
conferred can be exercised.   This proposition implies the Gen-
eral Assembly may classify counties by population, and laws
applicable to particular classes would be, in effect, general laws.
Power is given the General Assembly to classify counties by
population, and to regulate by general law fees and salaries
of certain local officers, according to class.   But that is a grant of
power for a specific purpose indicated, and it would seem to be a
restriction upon the power to classify counties by population or
otherwise, for any purpose not mentioned in the constitution.
Be that as it may, the recognition of the existence of such
power in the legislature might warrant the indefinite multi-
plication of classes of counties by population, or for other
causes, to which legislation might be made to apply.   That
construction, if once adopted, might, with equal propriety, be
extended so as to warrant the classification of other munici-
palities, as, cities, towns and villages, and the evils of class or
special legislation, that existed under the former constitution,
would be revived, only in a slightly modified degree.   Its
absurdity would be most manifest if the General Assembly
should designate as many classes as there are counties in the
State, and then enact a law limited in its operation to each
class, under the mere pretense it was, nevertheless, a general
law, applicable to a particular class.   Such a construction
would render valueless the salutary provision of the constitu-
tion forbidding "local or special laws."   That instrument, it
is safe to say, imposes a restriction upon the power of the
General Assembly in that regard, certainly to the extent, the
passage of "local or special laws" is inhibited in enumerated

38—84TH ILL.

cases, among which are acts regulating "county and township affairs." Designating counties as a class according to a minimum population, which makes it absolutely certain but one county in the State can avail of the benefits of a law applicable to such class, can not but be regarded as a mere device to evade the constitutional provision forbidding special legislation.

Nor do we think this law can be sustained on the other ground suggested, that a "local or special law," applicable to the affairs of Cook county, is authorized by the seventh section of article ten of the constitution. That section does make Cook county subject to some special provisions, but it is distinctly declared, its affairs shall be managed by the board of commissioners, "in such manner as shall be provided by law." Special provisions have been made by general law for the management of the affairs of Cook county. The board of commissioners are given the control of the affairs of the county, and in so doing they "shall exercise the same powers, perform the same duties, and be subject to the same rules, regulations and penalties as prescribed by law for the board of supervisors." It was competent for the General Assembly to "provide by law," how the affairs of Cook county should be managed by the board of commissioners, and that having been done by general law, it must be recognized as the measure of their powers.

But waiving these considerations, and treating the law under which the resolution of the board was adopted, as valid when enacted, we think it was repealed by implication, either by subsequent inconsistent legislation on the same subject, or by recasting the whole law in relation to counties, as was done by the act of 1874. If this law can be regarded as a valid enactment, it must be for the reason it is a general law, regulating county affairs in a class of counties having over a designated population; but there is a general law enacted since, applicable to all counties in the State, without reference to what the population may be, which provides, county boards, before they can issue bonds to enable them to perform the

duties imposed upon them by law, must submit the question of issuing such bonds to the legal voters of the county at a general election, and the board of commissioners of Cook county are made subject to its provisions in like manner as are boards of supervisors. Sections 40 and 62, Rev. Stat. 1874, pp. 310, 313.

Under the first section of the act of 1872, as amended, the board of commissioners might issue bonds for the purposes indicated in the resolution, in their discretion, by a two-thirds vote of the board in the affirmative; but in the fortieth section of the general law enacted to regulate county affairs, to which the board of commissioners of Cook county is specially subjected, a different mode is provided; and it is made imperative, before they can do so, the question of issuing such bonds must be submitted to the legal voters of the county. Treating the act of 1872 as a valid, unrepealed law, there would be two statutes on the same subject—regulating county affairs—applicable to the same officers, not only inconsistent in the provisions indicated, but in other important particulars. Both statutes can not be executed, and hence both can not stand. The rule on this subject, as expressed in the terse language of an English case, is, "if two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience can not be observed without derogating from the first, it is the first that must give way." Potter's Dwarris, p. 155. Or we may state the rule in the language used by this court in *Dingman* v. *The People*, 51 Ill. 277: "When there is a clear repugnance between two laws, and the provisions of both can not be carried into effect, the later law must prevail, and the former yield to the last expression of the legislative will." To the same effect is *Van Inwagen* v. *City of Chicago*, 61 Ill. 31.

Another principle, having a close affinity to the one just stated, may be applied, which leads to the same conclusion— that is, a subsequent statute revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal

of the former. *Culver* v. *Third National Bank*, 64 Ill. 528;
*Andrews* v. *The People*, 75 Ill. 605. The scope of the general
law on that subject is aptly expressed in the title, as, " an act
to revise the law in relation to counties." Prior to the pas-
sage of that act there had been no general law regulating the
affairs of counties, since the adoption of the constitution,
which made it the duty of the General Assembly to provide,
by a general law, for the management of county matters. It
is what it purports to be, a general law, and embraces every-
thing pertaining to county matters, and contains a section, as
we have seen, investing county boards with power, when voted
by the legal voters of the county, to issue and sell bonds to
raise money to enable them to perform the duties imposed
upon them by law. That section may be regarded as a com-
plete revision of the first amended section of the act of 1872,
on the subject of issuing bonds for the purposes expressed in
the resolution of the board of commissioners. The act of
1874 applies to all counties in the State, and, as we have had
occasion before to remark, it is made applicable to the board
of commissioners of Cook county, as well as to boards of
supervisors of other counties. The act of 1874 is a complete
revision or recasting of the whole law in relation to county
affairs, and although it contains no express words repealing
former statutes, it must be regarded as a repeal of all other
laws on the same subject. It embraces everything contained
in the act of 1872, and much more that relates to the manage-
ment of county matters, and all inconsistent and conflicting
laws on this subject, previously enacted, must give way to this
last expression of the legislative will.

It follows, from the reasoning on the propositions stated,
the board of commissioners of Cook county have no power,
under the law, to issue bonds for any purpose named in the
resolution adopted, unless authorized by a vote of the legal
voters of the county, to whom the question of issuing such
bonds shall have been submitted at a general election, after
the amount and object for which it was proposed to issue
bonds had been first ascertained. That has not been done, and

hence there is a total want of authority to issue the proposed bonds, and any one whose property will be affected by a tax levied to pay the interest or principal may enjoin the issuing of such bonds.

The decree will be reversed, and the cause remanded.

*Decree reversed.*

Mr. JUSTICE DICKEY: There is no doubt, in my mind, that the act of February 23, 1873, is a "local" act. It is limited in its terms to counties "containing over one hundred thousand inhabitants," and is to be of no effect after July 1, 1879. The court will take judicial notice, not only that no other county in the State, except Cook county, had one hundred thousand inhabitants, but also that, without some supernatural interposition, no other county in the State can have one hundred thousand inhabitants until after July 1, 1879. But it seems to me it is going too far to hold that the *mere fact* that a statute is applicable only to counties having over one hundred thousand inhabitants, renders it a local law. In the course of time several counties may contain that number. A law intended to be perpetual may not, in my judgment, be subject to objection, although thus limited.

The fact that this law is local, does not, however, render it unconstitutional. I think local laws, regulating *county affairs* of Cook county, are not forbidden. True, the constitution says, in sec. 22, art. IV, the legislature "shall not pass local or special laws   *   *   *   for regulating county affairs." But *afterwards*, in section 7, art. X, of the constitution, it is said, " the *county affairs* of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago and five from the towns outside of said city, *in such manner as may be provided by law.*" This seems to have been intended to take Cook county out of the general rule of the constitution on that subject. Not only is this consonant with the meaning of the words of the constitution, but this view receives force from other parts

of the constitution. The necessity, in other respects, for legislation for Cook county, other and different from that needed for other counties, is elsewhere recognized in the constitution. The Superior Court of Cook county is preserved, with its three judges; the circuit court of that county is made to consist of five judges, while circuit courts for other counties have but one judge; the judges of the circuit court and Superior court of Cook county are permitted to receive salaries larger than that of the judges of the circuit court in other counties of the State. When it is remembered, that a statute enacted by the General Assembly is not to be pronounced unconstitutional unless it be clearly so, I can not say that this act is plainly unconstitutional.

As to the question of whether the statute in question was repealed in the manner suggested, it is my judgment that it was not repealed; but that question becomes of no importance after a majority of this court has declared the act unconstitutional.