GEORGE W. SMITH et al.

v.

THE PEOPLE ex rel. Louis Malone.

Filed at Springfield October 30, 1894.

1. SCHOOLS—city adopting general act retains its former school system. The adoption by a city of the general law for the incorporation of cities and villages, which has no relation to schools, does not abrogate provisions in such city's former special charter for the establishment and management of a system of schools, such provisions not being inconsistent with anything in said general law.

2. SAME—adopting minority representation by city does not affect school elections. The adoption of minority representation in a city council, pursuant to the general law, which throws the election of the city officers into every second year, does not abrogate a provision of the special charter of such city that members of the board of education shall be elected annually.

3. SAME—members of board holding till successors are qualified. Where a charter provides that members of a school board shall hold office until their successors are appointed and qualified, a failure to hold an election during any year does not dissolve the board or create a vacancy.

4. SAME—act of 1887, concerning school elections, repealed by act of 1889. The act of 1887, providing that in school districts acting under special charter elections might be held at the time provided by the School law for elections of school directors, and at such places in the district as the board of education might designate, was repealed by the act of May 21, 1889, revising the School law, and an election had thereafter under said act of 1887 gives no title to office.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

RICHARD YATES, CHARLES A. BARNES, and WILLIAM P. CALLON, for plaintiffs in error :

It is not competent for two persons, claiming different offices, to unite in one and the same information, for the purpose of determining the title to both offices, in one proceeding, and such a misjoinder of parties is fatal on demurrer. Nor is the application of the rule varied by the fact that the duties of the two offices are similar, or

that the incumbents participated in the same duties. High on Ex. Legal Rem. sec. 704; *People ex rel.* v. *DeMill*, 15 Mich. 164.

If claimants to the two positions could not be joined, how can incumbents of the two be joined?  19 Am. & Eng. Ency. of Law, 678; *Rex* v. *Warlow*, 2 M. & S. 75.

Whatever power the special charter conferred upon the city council with reference to the schools, school officers and school system of the city (*i. e.*, the district,) survived the change, because it was a part of the general School law of the State.  *Fuller* v. *Heath*, 89 Ill. 296; *Speight* v. *People*, 87 Ill. 600.

All parts of the special charter not inconsistent with the general law continued in full force and applicable to this city, the same as if no change of organization had taken place.  Rev. Stat. chap. 24, art. 1, sec. 6.

A statute fixing the election of an officer "at the general election," should be construed to mean on whatever day the proper authority may fix as the day for that election.  McCrary on Elections, p. 136, sec. 189; *People ex rel.* v. *Shaw*, 14 Ill. 476.

FELIX D. MCAVOY, ISAAC L. MORRISON, JOHN A. BELLATTI, and JULIAN P. LIPPINCOTT, for defendant in error:

When an election has been once fixed as to time, the phrase "each year thereafter," means occurring annually on the same day.  *People ex rel.* v. *Shaw*, 14 Ill. 476.

When words have been cast into form by the legislature, to express its intention, that intention becomes a fixed fact, and once ascertained is always ascertained. *Duncan* v. *Charles*, 4 Scam. 561; Bishop on Contracts, sec. 196; *Beardstown* v. *Virginia*, 76 Ill. 34; *Gardner* v. *Collins*, 2 Pet. 93; *Brewer* v. *Blougher*, 14 id. 178.

The evident purpose of the general Incorporation act was to assimilate the charters of the municipal corporations of this State, and place them, when of the same

grade, upon a uniform and common footing with respect to their corporate powers and the manner of exercising them.   *Board* v. *People ex rel.* 137 Ill. 660.

The amendment repealed the provision in the original act for changing the number of wards, as being utterly inconsistent with it.   *Illinois and Michigan Canal* v. *Chicago*, 14 Ill. 334; *Dingman* v. *People*, 51 id. 277; *Mt. Carmel* v. *Wabash County*, 50 id. 69 ; *Mullen* v. *People*, 31 id. 44.

All offices provided for in special charters, not specified in the general law, are abrogated on the adoption of the latter.   *People ex rel.* v. *Brown*, 83 Ill. 95 ; *Crook* v. *People ex rel.* 106 id. 237.

The whole responsibility for calling, holding the election and canvassing the returns of the election for city officers, at which the members of the board of education were to be elected, devolved upon the city council.   1 Private Laws of 1867, art. 3, p. 336.

The act of 1887 (Hurd's Stat. 1889, p. 1270, sec. 334,) assumes to affect special school laws in three points : Time, place and organization of the board, when elected.

At the common law, one of the ordinary powers considered essential to every corporation is to have succession by its corporate name, either perpetual or for a limited period.   4 Am. & Eng. Ency. of Law, 188 ; 1 Chitty's Blackstone, p. 475.

If a corporation consists of several integral parts, and some of those parts are gone and the remaining parts have no power to supply the deficiency, the corporation is dissolved.   *Phillips* v. *Wickham*, 1 Paige, 596.

Whenever a corporation is reduced to such a state as to be incapable of acting or continuing itself, it is dissolved.   *Rex* v. *Pasmore*, 3 T. R. 245 ; 4 Am. & Eng. Ency. of Law, 306.

If, when a corporation created for municipal purposes is superseded by a new and different corporation, no provision is made for the continuance or new election of the officers of the old corporation, the functions of the exist-

ing officers will cease when their respective terms expire, and the corporation will be *de facto* extinct. *Barkley* v. *Board*, 93 U. S. 258; 15 Am. & Eng. Ency. of Law, 1198, note 2; *Board* v. *People ex rel.* 137 Ill. 660; Angell & Ames on Corp. sec. 769; 1 Dillon, sec. 165.

Just here note the distinction made in our general laws: "Cities organized under this act shall be bodies politic and corporate," (Hurd's Stat. 1889, art. 1, sec. 10, p. 241,) while "the directors of each district are hereby declared a body politic and corporate." (School Law of 1867, art. 5, sec. 2.) So in our special charter (1 Private Laws of 1867, art. 5, sec. 2, p. 336,) "the inhabitants of the said city shall be a corporation," while "the public schools of said district shall be under the exclusive control and management of a board of education," etc.

BAILEY, J.: This was an information in the nature of a *quo warranto*, brought in the name of the People of the State of Illinois, by the State's attorney of Morgan county, on the relation of Louis A. Malone, a tax-payer and legal voter of the city of Jacksonville; charging Thomas S. Knowles with usurping the office of president, George W. Smith, John C. Widenham, Ethelbert D. Rothwell and Nathan R. Jerald with usurping the office of members, and O. I. Milburn, George W. Fanning and Andrew Russell with usurping the offices, respectively, of clerk, deputy clerk and treasurer of the board of education of the city of Jacksonville. The information contains three counts. The first and second counts attempt to set up and state affirmatively the title claimed by the respondents to their respective offices, while the third count charges, generally, that the respondents unlawfully hold and exercise the powers of their respective offices, and that there is no law authorizing such offices. The information was afterwards dismissed as to respondents Milburn, Fanning and Russell.

A demurrer was interposed to each count of the information and overruled as to the third count. The demurrer to the first and second counts was also overruled as to respondents Rothwell and Jerald, and sustained as to respondents Knowles, Smith and Widenham. Answers were thereupon filed by the three respondents last named to the third count, and by the other two respondents to the entire information. Demurrers being filed to each of the answers, the demurrer to the answer of respondent Knowles was overruled, and final judgment was rendered thereon in his favor dismissing the information as to him. The demurrers to the answers of the other four respondents were sustained, and they having elected to abide by their answers, final judgment was rendered against them, ousting them from the office of members of the board of education of the city of Jacksonville, and imposing upon each a fine of one dollar, and also for costs. To reverse that judgment they now bring the record to this court by writ of error.

Without attempting to state the several issues presented in the form in which they are submitted by the pleadings, we shall content ourselves with as brief a statement as practicable of the material facts involved, as they appear admitted of record.

The city of Jacksonville was incorporated by a special act of the General Assembly, approved February 16, 1867, the act being, by its own terms, declared to be a public act. (1 Private Laws of 1867, p. 336.) By section 3, article 1, of the act, the city was divided into four wards, and in the same section it was provided that the city council might, from time to time, change the boundaries of the wards and create additional wards, as occasion might require. By subsequent articles it was provided that the municipal government of the city should consist of a city council, consisting of a mayor and one alderman from each ward, and provision was also made for the election or appointment of various other city officers,

and for an election to be held on the first Monday of April, 1867, and on the first Monday of April in each year thereafter, at which should be chosen the mayor and aldermen and the other city officers required to be · elected. The elections were required to be held in each ward, and power was given to the city council to determine the time of day and the place in each ward for holding the election, and to appoint the judges thereof, and it was provided that the manner of conducting the election, of voting, of keeping the poll-lists, of canvassing the votes and certifying the result, and of contesting the election, should be the same that then was or thereafter might be prescribed by law for State elections.

Article 11 of the act provided for the establishment of a system of graded schools in and for the city. By section 1 of that article all the territory within the limits of the city, according to its then present or future boundaries, was erected into a common school district. Section 2 made provision for an equitable division of the school funds belonging to the township of which the city formed a part, between the school district thus created and the residue of the township, and section 3 required the township trustees to pay over and deliver to the board of education of Jacksonville the portion of the school funds to which that district was entitled. Section 3 also provided as follows :

"The public schools of said district shall be under the exclusive management and control of a board of education, to consist of the mayor of the city, who shall be president of the board, and one from each ward of the city, to be known as the 'Board of Education of Jacksonville School District,' each of whom, with the treasurer of said board, shall be sworn to discharge their duties with fidelity."

Section 4 gave the board thus constituted exclusive control over the school property and funds, and provided that a majority of its members, with or without its presi-

dent, should constitute a quorum for the transaction of business. Section 5 gave the board full power to buy or lease sites for school houses, with the necessary grounds therefor; to erect, hire or purchase buildings for school purposes, and to keep them in repair; to furnish schools with necessary books, fixtures, apparatus and libraries; to establish, conduct and maintain a system of graded schools, to be kept in one or more buildings in the district; to supply the insufficiency of school funds for the payment of teachers, and other school purposes and expenses, by school taxes, to be levied and collected as in the act provided; to determine the number, make the appointment and fix the amount of the compensation of teachers within the district, and to appoint a general superintendent of schools and prescribe his duties and fix his salary, and to appoint all other agents and servants and fix their compensation; to prescribe the branches to be taught and books to be used; to lay off and divide the district into smaller districts, and to alter the same or erect new ones at pleasure; to pass by-laws, rules and regulations to carry the powers of the board into complete execution, and for the government of its own body, its officers, agents and servants, and providing for its own meetings and adjournments, and, generally, to have and possess all power and authority necessary for the proper establishment and control of an effective system of graded schools within the district.

Subsequent sections made provision for determining the amount of money needed to be raised for school purposes, and for raising the same by taxation, or, in case of necessity, by borrowing, and also for keeping school funds not needed for immediate use loaned out at interest. Section 17 was as follows:

"The board of education shall be appointed, one in each ward of said city, by the city council, by a majority vote or ballot, and no person shall be appointed unless a householder and a resident of said ward for which he

is appointed, and each shall serve and hold his office for the term of one year from the date of their said appointment."

Section 18 provided that all officers under the act should hold their offices until their successors were appointed and qualified, but that removal from his ward by any director should vacate his office, and that whenever a vacancy should occur in the office of director, the city council of Jacksonville should supply the same upon notice thereof by the clerk of the city, which appointment should be for the unexpired term, only.

By an act to amend the charter of the city of Jacksonville, approved March 29, 1869, (2 Private Laws of 1869, p. 1,) it was provided that two aldermen should be elected in each ward, and section 3 of article 11 was amended so as to read as follows :

"The members of the board of education, representing the different wards, shall be elected by the people at the city elections of city officers, and shall go out of office as follows : two at the end of one year and two at the end of two years ; and that after the first election of said board, to-wit, at the next election of city officers, they shall cast lots, in the presence of the city council, for the long and short terms of office, and the two upon whom the lots for the short term shall fall shall go out of office at the end of one year and the other two at the end of two years, and the city council shall make a record thereof ; and after the first election of the board of education that two members thereof shall be elected each year, in conformity with this amendment."

In pursuance of the provisions of the original charter of the city, and of the amendment of 1869, the territory included within the city of Jacksonville became organized as a common school district, and a system of graded schools was organized and maintained therein, under the control of the board of education thereby provided for, and after the passage of the amendatory act one member

of the board was elected from each of the four wards of the city at the city election held on the first Monday of April in each year, their terms of office being two years, and two being elected each year. This state of things continued up to and including the election held April 4, 1887, and up to that time no question is or can be made as to the regularity of the organization of the school district, or as to the title of those elected members of the board of education to their office.

At the election held April 4, 1887, the city adopted and became organized under the general law for the incorporation of cities and villages, and also adopted minority representation in the city council, pursuant to the provisions of section 6, article 4, of the general Incorporation law. As a result, the regular elections for aldermen now occur only biennially, commencing with the year 1887, and as those are the same years provided by the general law, as amended in 1877, for the biennial election of the other elective city officers, viz., mayor, clerk, attorney and treasurer, (1 Starr & Cur. Stat. 460,) the regular elections for the choice of the city officers above named have been and now are held only once in two years.

It is alleged by the answers of respondents Smith and Widenham, and admitted by the demurrers, that Smith was elected a member of the board of education from the first ward and Widenham from the second ward at the regular election for city officers held on the third Tuesday of April, 1891, and that Smith had been elected a member from the first ward each alternate year from 1877 to 1891, both inclusive; that at the time of their election in 1891 they were both residents, householders and legal voters in their respective wards, and duly qualified to hold the office of member of the board, and that upon being elected they both took the oath of office, and entered upon the discharge of the duties of the office of member of the board.

Respondent Rothwell alleges in his answer, among other things, in substance, that on the first Monday of April, 1886, John Loar was regularly elected a member of the board from the third ward, for the term of two years, and until his successor should be elected and qualified, and that he held the office until the election of city officers in April, 1890; that at the time of the regular election of city officers at the date last named, and at an election duly and legally called and held, the respondent, being then and there a householder and resident of and a legal voter in the third ward of the city, was by a majority of the voters of the ward regularly and legally elected a member of the board from that ward for the term of two years, and until his successor should be duly elected and qualified, and that he thereupon took the oath of office and has since acted as a member of the board.

The answer of this respondent, and also that of respondent Jerald, further alleges, in substance, that in April, 1892, the board of education, by a resolution duly offered and passed, adopted the act of March 25, 1887, amending section 1 of the act entitled "An act enabling school districts acting under special charters to hold elections of school directors and members of boards of education at the time provided for the election of school directors under the school laws of this State," approved June 29, 1887, the section as amended providing: "That in all cases where the time for the election of members of boards of directors and boards of education is fixed by virtue of any special charter, such election may be held at the time now provided, or which may hereafter be provided, for the election of school directors under the school laws of this State, and that such election may be held at such place in the school district as may be designated by the board of directors or board of education of such school district, and such boards of directors or boards of education, when elected, shall meet and organize at the time and in the manner now provided, or which may hereafter be pro-

vided, under the school laws of this State." Laws of 1887, p. 290.

The answers further allege that upon the adoption of the last mentioned act by the board of education, the board, at a regular meeting held April 4, 1892, called an election for members of the board for the third and fourth wards of the city, such election to be held on April 16, 1892,—the time fixed for the election of school directors by the School law,—and fixed the places for holding the election, appointed the judges thereof, gave notice of the election, and performed all the requirements of the law; that such election was duly and legally held and returns thereof made to the board, and that respondent Rothwell was duly elected member of the board from the third ward and respondent Jerald from the fourth ward, both possessing the necessary qualifications, and that both were declared duly elected, and took the oath of office and qualified as members of the board.

In each of the answers an attempt is made to set up, by way of defense, a misjoinder of defendants, and that the right of the State to maintain the information is barred by the Statute of Limitations.

The principal contention on the part of the relator, as we understand it, is, that the adoption by the city of Jacksonville of the general law in relation to the incorporation of cities and villages, and its organization under that law, abrogated the special charter of the city and rendered the same *functus officio*, and that article 11 of the charter, by which the territory within the boundaries of the city was erected into a common school district, and provision was made for its organization and government as such, was also so far superseded as to have become inoperative.

Section 6 of article 1 of the general law provides that, in case of the organization of any city under it, its provisions shall apply to such city, and that all laws in conflict therewith shall no longer be applicable. The same

section, however, further provides as follows: "But all laws or parts of laws not inconsistent with the provisions of this act shall continue in force and applicable to any such city or village, the same as if such change of organization had not taken place." (1 Starr & Cur. Stat. 454.) In the general Incorporation law no provision whatever is made in relation to the establishment, organization cr government of common school districts, or the maintenance therein of common or graded schools, and as it in no way attempts to deal with the subject of schools, it seems perfectly plain that article 11 of the special charter of the city of Jacksonville is not, and cannot be, inconsistent with the provisions of the general law. It can not be doubted, therefore, that article 11 remained in full force, notwithstanding the adoption by the city of the general law.

It is suggested, however, that there are certain insuperable difficulties in the way of adjusting the affairs of the school district to the legal conditions consequent upon the adoption by the city of the general Incorporation law, which make it impossible to continue the district in being and to keep up its legal organization under the provisions of the special charter.

First, as to the number of members of which the board of education must consist. By the special charter the city of Jacksonville was divided into four wards, with power in the city council to increase the number of wards at its discretion, and it was provided that the board of education should consist of the mayor and one member from each ward. By the amendatory act of 1869 the members of the board were made elective, and it is claimed that by the provision that their terms of office should be two years, and that two should go out of office and two be elected each year, their number was, by implication, limited to four, and it is insisted, that as the city of Jacksonville has over 10,000 inhabitants, and is consequently entitled, under the provisions of the general law, to have

fourteen aldermen and to be divided into seven wards, its present municipal system is inconsistent with the one under which the school district was organized.

Upon this point all that need be said is, that the division of the city into four wards has never, as yet, been changed, and the difficulty that might arise in case the number of wards should be increased does not as yet exist. But we are not disposed to think that it was the intention of either the original charter or of the amendatory act of 1869 to limit the number of members to four in case the city should be divided into more than that number of wards. The original charter provided that the board should consist of the mayor and one member from each ward in the city, whatever might be the number of wards, and the amendatory act provided that the members should be elected, and that at the first election they should cast lots for the long and short terms, and that two should go out of office at the end of one year thereafter and two at the end of two years. It would not be giving these provisions a forced or improbable construction to hold that the limitation of the board to four members was intended to apply only so long as the number of wards was not increased, and that upon such increase the additional members should be in like manner divided between the classes holding the long and short terms.

But the contention upon which the greatest emphasis seems to be laid is, that the change in the time for holding city elections produced by the adoption of the general law, and also by the adoption of minority representation in the city council, is such as to make the provisions of the original charter in relation to the school district no longer applicable. By the terms of the charter the elections for city officers were appointed to be held on the first Monday of April in each year. By the adoption of the general law they were changed to the third Tuesday in April, and as a result of the adoption of minority representation in the city council the elections for aldermen,

as well as for mayor, clerk, attorney and treasurer, are now held on that day only each alternate year. The conclusion is sought to be reached that there are now no city elections, as contemplated by the amendatory act of 1869, at which members of the board of education can be legally elected.

We are disposed to hold that the mere fact that, owing to the adoption of minority representation by the city, no city officers are now elected each alternate year, can not be held to have the legal effect of altogether doing away with city elections for those years. By the statute those elections are appointed to be held on the third Tuesday of April in each year, and at those elections both city officers and members of the board of education were required to be elected. The adoption of minority representation, which had resulted in throwing the election of all city officers in the odd numbered years, has not repealed the law providing for annual elections. Those elections may still be held for the choice of members of the board of education, although no other city officers are in fact to be elected.

The question then is, whether, in the light of these views, the respondents, or any of them, have shown a legal election to the office of member of the board of education. It is to be remembered in this connection, that by section 18 of article 11 of the original charter it is provided that all officers under the act shall hold their offices until their successors are appointed and qualified, and it would seem, therefore, that a failure, for any reason, to hold an election for members of the board during any one year does not have the effect of dissolving the board or of creating a vacancy in its membership, as each incumbent, notwithstanding the expiration of the two years for which he was elected, holds until his successor is elected and qualified.

Respondent Smith, as his answer alleges and as the demurrer admits, was first elected in 1877, and has been

elected as a member of the board for the first ward each alternate year since that time, up to and including the year 1891, the last election being at the regular election for city officers held that year. It is also admitted that he was legally qualified to hold the office, and that upon his last election he duly took the oath of office and entered upon the discharge of the duties pertaining thereto. These facts being admitted, we think this respondent has shown a complete legal title to his office, and that the circuit court erred in holding otherwise, and in rendering judgment of ouster against him.

Precisely the same thing may be said of respondent Widenham, except that he was elected for the first time at the regular election for city officers held in April, 1891. That election, coupled with his subsequent qualification, vested in him a complete legal title to his office, and that title was valid on the 24th day of December, 1892,—the date of the commencement of these proceedings. The judgment of the circuit court ousting him from his office is therefore also erroneous.

Respondent Rothwell, as his answer alleges and as the demurrer admits, being a householder and resident of and a legal voter in the third ward of the city, was by a majority vote of the voters of that ward regularly elected a member of the board for that ward at the time of the regular election of city officers in April, 1890, and at the election then duly called and held, to hold his office for the term of two years, and until his successor should be duly elected and qualified, and that he thereupon took the oath of office and has since acted as a member of the board. The election then held being, as we have already seen, a regular and legal election, notwithstanding the fact that no city officers other than a member of the board of education appear to have been elected at that time, we are of the opinion that this respondent sufficiently shows his qualification for, his election to and induction into the office which he claims to hold, and that the circuit

court therefore erred in rendering judgment of ouster against him.

The title set up by respondent Jerald to the office of member of the board rests solely upon the election called by the board in April, 1892. In calling that election the board assumed to act under the provisions of the act of 1887, above mentioned, which provided that in school districts acting under special charters elections might be held at the time provided by the School law for the election of school directors, and at such place in the district as the board of education might designate. Whether the provisions of that act were applicable to the school district in question, and whether its provisions were followed in calling and holding the election of 1892, need not be determined, since prior to that date the act itself was repealed by the act of May 21, 1889, making a general revision of the School law. Section 12 of article 16 of that act, after specifically repealing a large number of prior acts relating to schools, contains a general repealing clause, by which "all other acts and parts of acts inconsistent with this act, and all general school laws of the State," were repealed. (Laws of 1889, p. 344.) It can not be doubted that the act of 1887, above referred to, was a general school law, and being so, it was expressly repealed by the act of 1889. Such being the case, the election called and held by the board of education in 1892 was without warrant of law, and therefore invalid, and gave to those elected to membership in the board no right or title to that office. It follows that respondent Jerald failed to show any title to his office, and that judgment of ouster was properly entered against him.

The judgment as to respondent Jerald will be affirmed, but as to the other respondents the judgment will be reversed, and the cause will be remanded.

*Judgment affirmed in part and reversed in part.*