THE PEOPLE *ex rel.* George S. Rogerson, Petitioner, *vs.* WILLIAM A. CRAWLEY *et al.* Respondents.

*Opinion filed June 22, 1916.*

1. CONSTITUTIONAL LAW—*purpose of section 22 of article 4 of the constitution.* The chief purpose of the provisions of section 22 of article 4 of the constitution concerning special legislation was to discourage dissimilarity and to promote and encourage legislation which shall be uniform on all subjects referred to in such section.

2. SAME—*the legislature has power to change or modify special charters of cities and villages.* It was not intended by section 22 of article 4 of the constitution that the special charters, then in existence, of cities and villages could not be changed or modified by the legislature, as all municipal corporations are subject to legislative control.

3. SAME—*the act of 1915, repealing article 11 of special charter of the city of Jacksonville, is not invalid.* The act of 1915, (Laws of 1915, p. 286,) which in express terms repeals article 11 of the special charter of the city of Jacksonville, relating to the common schools of the city, is not in violation of the provisions of section 22 of article 4 of the constitution that the legislature shall pass no local or special laws for incorporating cities, towns or villages, or changing or amending the charter of any town, city or village, or providing for the management of common schools.

4. SAME—*legislature may repeal provision of special charter of city without consent of the voters.* The fact that the voters of a city having a special charter provision for the government of its schools has voted against abandoning such provision and adopting the provisions of the general law on the subject does not prevent the legislature from repealing such provision.

DUNN and CARTWRIGHT, JJ., dissenting.

ORIGINAL petition for *mandamus.*

GEORGE B. GILLESPIE, (GILLESPIE & FITZGERALD, of counsel,) for petitioner.

M. T. LAYMAN, J. MARSHALL MILLER, and JOHN M. BUTLER, for respondents.

Mr. JUSTICE CARTER delivered the opinion of the court:

At the April term of this court a petition was filed for a writ of *mandamus* against the respondents, trustees of schools of township 15, north, range 10, west of the third principal meridian, in Morgan county, Illinois, requiring them to cause the territory formerly constituting school district No. 117, theretofore acting under special charter, to be organized into a school district under the general School law of the State and to hold an election for a board of education. The writ was issued as prayed at the April term, with the statement from the bench that an opinion would be filed later.

The city of Jacksonville was incorporated by special charter on February 10, 1857. (Private Laws of 1857, p. 344.) The legislature amended the charter several times, and by a special act approved February 16, 1867, granted a new charter. (1 Private Laws of 1867, p. 336.) This charter was also amended prior to the constitution of 1870. Article 11 of that charter provided for a system of "graded schools." The first section of that article stated that all the territory within the city of Jacksonville should be a common school district, and section 3 provided that the district should be under the supervision of a board of education, consisting of the mayor and one director from each ward. Section 18 provided that all the officers should hold their offices until their successors were appointed and qualified. The district composed of the said city has been known as No. 117. In 1887, under an election held for that purpose, the city of Jacksonville adopted and became organized under the general law for the incorporation of cities and vil-

lages. This court, in *Smith* v. *People,* 154 Ill. 58, while deciding that the city of Jacksonville by this election abrogated the special charter, generally, as to city government, held that article 11, providing for a special school district, was still in force. In 1915 an act was passed repealing section 11 of the city charter, reading as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That article 11 of an act entitled 'An act to incorporate the city of Jacksonville, in the county of Morgan, and State of Illinois,' approved February 15, 1867, as amended by an act approved March 29, 1869, be and the same is hereby repealed. This act shall not take effect and be in force until the first day of March, A. D. 1916." (Laws of 1915, p. 286.)

On March 1, 1916, the school trustees of said township held a special meeting at the request of various citizens, to consider whether the territory theretofore composing school district No. 117 was unincorporated territory, and whether, therefore, they should proceed to organize it under section 45 of the general School law. At this meeting the trustees passed a resolution which stated, among other things, that they refused to take any steps towards the organization of said territory into a school district until required to do so by the judgment, order or decree of a competent court. The respondents have filed an answer in this cause, admitting all the material facts here stated but denying that the writ should issue, because they assert that said act repealing article 11 is void, being special legislation in conflict with section 22 of article 4 of the constitution of 1870.

The provisions of said section 22 which are relied on by respondents read as follows: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: For * * * incorporating cities, towns or villages, or changing or amending the

charter of any town, city or village.  *  *  *  Providing
for the management of common schools.  *  *  *  In all
other cases where a general law can be made applicable, no
special law shall be enacted."

It is not seriously contended by counsel for respondents
that the last clause just quoted applies to the facts in this
case. They insist, however, that the repeal of said article 11
amounted to changing and amending the charter of a city;
while counsel for the People insist that under the state-
ment of facts such act of June, 1915, in no way amends
or changes the city charter, as, they argue, under the hold-
ing in *Smith* v. *People, supra,* the special charter of the city
was revoked and the city came under the general Cities and
Villages act and the school district was practically left un-
der a special charter by itself, which did not still constitute
a part of the city charter. They further argue that under
the decisions of this court, among which is *Land Comrs.* v.
*Kaskaskia Commons,* 249 Ill. 578, the act of June, 1915,
does not provide for "the management of schools." There-
fore they claim said act is not void as in conflict with any
of the provisions of section 22.

For the purposes of this case we will assume that arti-
cle 11 of the special charter of said city was at the time
of the passage of said act of June, 1915, still to be consid-
ered a part of the city charter. Must we then conclude that
the act of June, 1915, is in conflict with the provision of
said section 22 of article 4 of the constitution that the char-
ters of incorporated cities cannot be amended or changed
by special legislation? We cannot hold that said act is so
in conflict. The general principles governing the construc-
tion of constitutions are the same as those that apply to
statutes. (*People* v. *Hutchinson,* 172 Ill. 486, and cited
authorities; 8 Cyc. 729.) If there be any distinction, less
technical rules of construction are applied in construing
constitutions than in construing statutes. "Narrow, tech-
nical reasoning is misplaced when it is brought to bear

upon an instrument framed by the people themselves for themselves, and designed as a chart, upon which every man, learned and unlearned, may be able to trace the leading principles of government." (Cooley's Const. Lim.—6th ed.— 73; Am. & Eng. Ency. of Law,—2d ed.—925, and note.) In construing constitutions, as with statutes, the chief purpose is to give effect to the intent of the makers. (Cooley's Const. Lim.—6th ed.—69.) In seeking such intention we are to consider the language used by the legislature, the evil to be remedied and the object to be attained. We are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not within the intention. When the intention can be gathered from the entire document, words may be modified or altered so as to obviate all inconsistency with such intention. When great inconvenience or absurd consequences will result from a particular construction the courts are bound to assume that such consequences are not intended. (*Hoyne* v. *Danisch,* 264 Ill. 467, and cases cited; *Warner* v. *King,* 267 id. 82.) "In construing so important an instrument as a constitution ＊ ＊ ＊ we are not, on the one hand, to indulge ingenious speculations which may lead us wide from the true sense and spirit of the instrument, nor, on the other, to apply to it such narrow and constrained views as may exclude the real object and intent of those who framed it. ＊ ＊ ＊ We are to suppose that those who were delegated to the great business of distributing the powers which emanated from the sovereignty of the people and to the establishment of rules for the perpetual security of the rights of person and property had the wisdom to adapt their language to future as well as existing emergencies. ＊ ＊ ＊ *Qui hæret in litera, hæret in cortice,* is a familiar maxim in the law. 'The letter killeth but the spirit maketh alive,' is the more forcible expression of scripture." (*Henshaw* v. *Foster,* 26 Mass. 312.) The chief, if not the sole,

purpose of the provisions of said section 22 of article 4 of the constitution was to discourage dissimilarity, and to promote and encourage legislation which should be uniform on all subjects referred to in said section. The debates in the constitutional convention on this subject and the decisions of this court support this conclusion. In *People* v. *Cooper,* 83 Ill. 585, in construing the provisions of this section of the constitution, it was stated (p. 591): "It is the substance, and not the mere form given to the enactment, which must determine its constitutionality. If the act must necessarily produce a result clearly and unquestionably forbidden by the constitution it cannot be upheld, whatever may be its form or profession, and, therefore, if the General Assembly should, by one or more enactments, authorize the incorporation of every city, every town or every village with a distinct and dissimilar organization and powers, such enactment or enactments would be within the constitutional prohibition of 'local or special legislation,' although having the form of general laws." In *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Randle,* 183 Ill. 364, it was argued that certain acts violated the provisions of the constitution as to special legislation. The court there said (p. 370): "The acts in question do not violate this provision. They apply to all cities in the State having such school laws, and prescribe for them the same methods of constituting the board of education, and of the same limit of taxation, as is prescribed for other cities which levy school taxes under the general law. These acts tend to uniformity rather than to perpetuate differences. Surely an act which should repeal all such special laws would not be a local or special law and obnoxious to this provision of the constitution, and so one repealing all special limitations, leaving all other provisions of such special acts in force, is, upon the same principle, not prohibited."

It was never intended by these provisions of the constitution that the special charters then in existence of cities

and villages could not be changed or modified. It has been frequently held by this court that all municipal corporations are subject to legislative control, and their charters may be changed, modified, enlarged, restrained or abolished to suit the exigencies of the case. (*City of Chicago* v. *Town of Cicero*, 210 Ill. 290, and cited cases; *Chalstran* v. *Board of Education*, 244 id. 470.) The only restriction upon this power is that it shall not be done by local or special laws. It may well be that article 11 of the special charter of the city of Jacksonville is different from the school provisions of the special charter of any other city, in the State. By this section of the constitution it was surely never understood that there was no legal way of modifying or changing said article 11. If it cannot be done by this law, then a law which by its words seemed to apply to all cities having such provisions would not be constitutional if, in fact, it only applied to the city of Jacksonville, for this court has more than once held that a statute general in its terms but applicable only to one single locality was special and not general. (*Devine* v. *Cook County Comrs.* 84 Ill. 590; *Knopf* v. *People*, 185 id. 20; *Kingsbury* v. *Sperry*, 119 id. 279; *Pettibone* v. *West Chicago Park Comrs.* 215 id. 304.) This court has never held any act unconstitutional, under this section, which tended to uniformity rather than to create differences, and while it may be argued that this act is special, in that it only applies to one city, to so hold would surely be to construe these constitutional provisions technically and not according to their spirit, for the result of this legislation is to bring the schools in the city of Jacksonville under the provisions of the general law, and thus promote uniformity "rather than to perpetuate differences." This court said in *People* v. *Cooper, supra,* on page 590: "It is not admissible, either by the letter or the spirit of the constitution, that dissimilarity in character of organization or powers, in municipalities of the same class or grade, shall be created or perpetuated by enactments of the Gen-

eral Assembly." This doctrine is quoted with approval by this court in *People* v. *Board of Trustees,* 170 Ill. 468. To hold as contended by counsel for respondents would be to defeat the essential principle which said section 22 was enacted to safeguard and guarantee. In *Jarrolt* v. *Moberly,* 103 U. S. 580, the court said (p. 586) : "A constitutional provision should not be construed so as to defeat its evident purpose but rather so as to give it effective operation and suppress the mischief at which it was aimed. * * * To contend * * * that the mere subdivision of counties into townships enabled the legislature to evade the constitutional provision is to ignore the manifest intention and spirit of that instrument." This is in accord with the principle already quoted from a decision of this court, that "it is the substance and not the form" that determines the constitutionality of an enactment. It is the real intent and purpose, rather than the strict interpretation, that should be followed in construing constitutions.

We cannot escape the conclusion that by the great weight of authority, as well as by the letter and spirit of these constitutional provisions, this statute is valid. To so hold certainly tends to promote uniformity in the character of the organization of incorporated cities and in the management of their schools, and not to perpetuate dissimilarity.

Counsel for respondents in their answer assert that in recent years the voters of the city of Jacksonville have voted against organizing the school district under the general law. We do not think this is material to the constitutional question here under consideration. In matters of this kind it is solely within the discretion of the legislature to decide whether they shall first obtain the consent of the people in the locality to be affected or act directly themselves. *City of Chicago* v. *Town of Cicero, supra.*

The law being valid, the writ will be awarded as asked for in the petition.                    *Writ awarded.*

DUNN and CARTWRIGHT, JJ., dissenting:

The laws by virtue of which a city exercises its powers and performs its duties constitute its charter. Article 11 of the charter of the city of Jacksonville, providing a system of schools, was not abrogated by the organization of the city under the general City Incorporation act (*Smith* v. *People*, 154 Ill. 58,) but continued as the law, under which the duty was imposed upon the city of sustaining graded schools, and by virtue of which, as a part of its charter, it exercised the powers granted to it for that purpose. Argument that the act of 1915 repealing article 11 is special is unnecessary, for it applies by name to the city of Jacksonville alone. (*Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304.) A statute which, by its terms, can have application to but one locality in the State is special legislation. (*Devine* v. *Commissioners of Cook County,* 84 Ill. 590.) The act amended the charter of the city, for it changed the law under which the city exercised its powers. (*Knopf* v. *People,* 185 Ill. 20.) The opinion of the majority assumes that article 11 of the special charter of the city of Jacksonville was a part of its charter at the time of the passage of the act of 1915 and does not state that the act is a general law or that it is not a special law. It merely holds that the statute is valid because it tends to promote uniformity in the character of the organization of incorporated cities and in the management of their schools and not to perpetuate dissimilarity,—that is to say, that the constitutional provision against the amendment of a city charter by a special law may be disregarded in this instance because the special law tends to promote uniformity. The same argument may be made for the amendment of every special charter in the State by a special law. Uniformity may be desirable, but the constitution has provided that in the case of the charters of towns, cities and villages it must be brought about by general laws and not by a special law for each case.

It is said that it may well be that article 11 of the special charter of the city of Jacksonville is different from the school provisions of the special charter of any other city in the State. The different provisions in the charters of municipalities operating under special charters cannot be made the basis of a classification of such municipalities and of special legislation based upon such classification. (*People* v. *Board of Trustees*, 170 Ill. 468.) It is within the power of the legislature, by the enactment of laws uniform in their operation, to bring about uniformity of organization and power in all the towns, cities and villages in the State, but the constitution has forbidden that this shall be done by special acts of legislation for particular cases.

The writ of *mandamus* should be denied.