MARSHALL M. POOL et al.

v.

MARY P. DOCKER et al.

92   501
29a   44

92   501
135   478

92   501
39a   256

92   501
143   156

92   501
160   154

92   501
61a   327

92   501
60a   615

92   501
68a   211

92   501
84a   294

92   501
181   618

92   501
93a   673

92   501
200   5476

92   501
109a   399

92   501
114a   5144

92   501
115a   5486

1. CROSS-ERRORS—*in chancery—whether necessary.* Where neither party to a suit in chancery challenges the finding of the court below as to any ground of relief in the case, it will be understood they do not desire to litigate that question further;—and while it may be that in chancery cases it is not necessary, in order to bring the whole case before the court, that cross-errors should be assigned, yet where the appellee does not challenge, in some appropriate mode, a finding against him as to matters of relief, it will be taken that he acquiesces as to any other final decision.

2. CHANCERY JURISDICTION—*mistake.* Corrections of mistakes in any transaction is a principal head of equity jurisdiction.

3. So, where the heirs of a deceased person had agreed to make distribution of the estate equally among them, thereby changing the mode of division as prescribed in the will of the ancestor, and in making the distribution as thus agreed upon it was alleged a mistake had been made in computing the amount to which certain of the distributees was entitled, it is within the jurisdiction of a court of chancery to inquire whether a mistake has intervened, and if so, to grant the proper relief.

4. SAME—*as to trusts.* A party who was seized of property, real and personal, devised the larger part of his estate to a portion of his children. Upon the death of the testator his children agreed among themselves that the estate should be divided equally. In order to accomplish such equal distribution it was agreed that the real estate should, after a time fixed, be sold; but in the meantime those holding the legal title under the will should account to the others for a certain proportion of the rents and profits. This was held to constitute those who thus held the title to the lands, trustees, in part, for the benefit of the other heirs, and a court of chancery could take hold of the trust, for a discovery and to compel an account to be taken of the rents and profits.

5. SAME—*will be retained for all purposes.* Where a court of chancery has once properly obtained jurisdiction for any cause, it will retain that jurisdiction to do justice between the parties, although that may require matters to be passed upon which, alone, would not be cognizable in a court of equity.

6. CONSIDERATION—*adjustment of controversy.* The adjustment of a controversy honestly inaugurated, in respect to property interests, is a sufficient consideration to support an agreement in respect to the subject matter of such controversy.

7. So, where a testator devised the larger portion of his estate to a part of his children, leaving to the others but a small portion, and the latter filed a bill in chancery to set aside the will in order to compel an equal distribution of the property, an agreement between all the heirs, pending the litigation, for an equal distribution of the estate, and in adjustment of the controversy in respect to the will, was held to be based upon a sufficient consideration.

8. SAME—*one promise a consideration for another.* And further, in the settlement of the controversy among the heirs, the widow of the testator yielded up all her claims upon the estate upon an agreement on the part of all the children to pay to her a certain sum at stated periods during her life, and this promise on the part of those of the children to whom but a small part of the estate had been given by the will, was a sufficient consideration for the agreement by those to whom was devised the larger portion of the property, to make an equal division.

9. CONSTRUCTION OF CONTRACT—*as to amount upon which interest should be paid —in adjusting division of estate.* The owner of an estate consisting of lands, bank stock and other personal property, devised the same to his four children, but in unequal proportions. The bank stock, which comprised a very considerable part of the estate, together with the greater part of his real estate, he gave to two of his children. To the other two he gave only a small part of the lands. This mode of distribution not being satisfactory to these last mentioned devisees, an agreement was entered into between the four children, providing for an "equal division, as near as might be, of the entire estate, real and personal." It was provided in this agreement that the two children to whom the will gave the bank stock should retain a majority interest therein, giving the smaller portion to the other two, the entire value of the lands taken by these two last mentioned under the will to be charged to them by way of equalizing their interest with that of the other two in the bank stock, and then, in order to fully equalize the interests in the bank stock, the deficiency in respect thereto should be made up to those who were to have the smaller portion of it out of proceeds of sales of real estate, and until such sales should be made, those holding the majority interest in the bank stock were to account to the others for one-half the rents and profits of the lands.

By a second agreement between the parties it was provided, as being to the interest of all concerned, that the proposed sales of the real estate should be postponed for a specified time, and that in the meantime the parties holding an excess of the bank stock, after deducting the value of the lands taken by the other two under the will, should pay interest thereon at a stipulated rate. This second agreement also provided that, as the "entire value" of these last named lands was for the "present to be deducted" from the excess of the value of the bank stock, in case of failure in the title to any portion of such lands, the estimated value of the lands which might thus be lost should be refunded to the devisees of them by the holders of the excess of the bank stock, with interest.

The second agreement also discontinued the liability for accruing rents and profits as provided in the first agreement.

In giving. a construction to these contracts in respect to the portion of the excess of the bank stock which should bear interest under the second agreement, it was *held*, that interest should be computed only upon such portion as might remain after deducting from the whole amount of the excess the entire value of all the lands given by the will to the two children who were to have the smaller portion of the bank stock.

APPEAL from the Appellate Court of the Fourth District.

Mr. SAMUEL S. MARSHALL, Mr. R. W. TOWNSHEND, Mr. T. M. ECKLEY, and Messrs. CREBS & CONGER, for the appellants.

Mr. A. D. DUFF, and Mr. CARL ROEDEL, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court: .

Concerning the material facts of this case there is no disagreement between the parties. Orval Pool died June 30, 1871, leaving him surviving Madeline Pool, his widow, and Mary Pool Docker, Marshall M. Pool, Ellen Pool Peeples, and Augusta M. Pool Townshend, his children and only heirs at law. The estate left by decedent was quite large, and consisted of lands, bank stock and other personal property. By the terms of his will the testator gave the largest portion of his estate to his two children Marshall and Augusta, but made some provision for his wife and his other daughters. Madeline Pool, his widow, renounced the provisions of the will in her behalf, and elected to take her interest in the estate under the statute.

Even before the will was opened for probate it was understood what disposition had been made of the estate, and Mary and Ellen were dissatisfied with its provisions. What efforts may have been made before the will was probated to secure an agreement for an equal division of the estate between the heirs is a matter of no consequence. The will was duly probated without objections from any one, so far as the record discloses. There is some testimony that Marshall and

Augusta tendered to their sisters an equal share with them in the estate of their father, with a limitation of a life estate in them, and the remainder to their heirs, but if such a proposition was made it was not accepted.

Soon after it was admitted to probate, a bill was filed by Mary and Ellen to contest the will and have it set aside. Pending that suit an understanding was reached between the parties as to how the estate should be divided. Thereupon the suit to contest the will was dismissed at the costs of complainants, and, as recited in the record, it was by "agreement of all the parties" thereto. There is some conflict in the evidence as to whether defendants made any agreement as to the dismissal of the suit, but on that question it will not be necessary to express a definite opinion. The suit was dismissed, whether by agreement of parties or not, at the costs of complainants, so as to bar another bill for the same cause, and on the same day the first agreement between the parties as to the division of the estate was signed. Under that agreement, "equal division, as near as may be, of the entire estate, real and personal," of which the testator died seized, was to be made between the four heirs named.

In consideration of certain provisions made for her, and the payment of a certain sum semi-annually by each of her children for her maintenance, Madeline Pool joined in the execution of that agreement, and released her dower in the lands of the estate and all her interest in the personalty, for the benefit of the heirs.

On the 19th of November, 1872, another agreement was entered into by the parties, in the first article of which it is recited it is made for the express purpose of carrying into effect the former agreement, bearing date November 2, 1871, between the same parties, and is not intended and is not to be construed as conflicting with the last mentioned agreement.

Among the assets of the estate there were seventeen hundred and ten shares of stock in the "Gallatin National Bank."

Under the first agreement for the division of the estate, it was provided that Marshall and Augusta should retain thirteen hundred and ten shares, and Mary and Ellen should have four hundred shares. It was then provided that the trustee to be appointed under that agreement should sell and convert into money, so soon as it could conveniently be done without sacrifice, so much real estate as might be necessary to equalize the interest of Mary and Ellen with the interest of Marshall and Augusta in the shares of bank stock,—which sum, when so raised, was to be invested by the trustee as provided therein, and subject to the limitation therein contained.

Under the will of the testator, Mary and Ellen took certain real estate, and by one clause of the first agreement a committee was to be appointed to ascertain the value of such real estate, and when so ascertained it was expressly agreed the amount should be charged to them, by way of equalizing their interest with that of Marshall and Augusta in the shares of bank stock before mentioned. That was done, and the value of the real estate devised to Mary and Ellen fixed by an appraisement made by the committee selected.

It appears, from the recitals in the second article of the agreement of November, 1872, that, in the opinion of the parties thereto, a postponement of the sale of the lands by the trustee, as provided in the former agreement, would subserve the best interests of all persons having rights in such lands,— and thereupon it was agreed there should be no public sale of such lands for a period of one year, without the written consent of all the parties interested. It was then agreed, as in the tenth article of the second agreement, that the parties having an excess of the bank stock, after deducting the value of the lands devised to Mary and Ellen, should pay to the trustee, for their use, semi-annual interest thereon at the rate of six per cent. It was also provided in the eleventh article of the same agreement, that, inasmuch as it was apprehended the title to some of the lands devised respectively to Mary and Ellen might fail, and as the "entire value" of

the lands supposed to have passed under the will to them was for the "present to be deducted" from the excess of the estimated value of the bank stock, it was agreed that Marshall and Augusta should refund to the trustee for the *cestuis que trust* the estimated value of all such lands to which the testator did not have title, or which has not become good since his death, with interest.

By a clause of the first agreement it was provided, that until the lands the trustee was directed to sell to equalize the interest of Mary and Ellen in the bank stock should be converted into money for that purpose, it was made the duty of Marshall and Augusta to pay over to the trustee one-half of the net rents and profits of such real estate, for the use of Mary and Ellen; and by the eighth article of the second agreement they were not to be held liable for any rents that had hitherto accrued, except such as had actually been received by them, but thereafter they were to be liable for such rents as they received or might receive by the exercise of reasonable diligence.

As expressed in the tenth article of the agreement of November, 1872, the value of the shares of bank stock was fixed at $111. The total value of the 1710 shares would be $189,810. An equal division would give Mary and Ellen $94,905 and Marshall and Augusta the same amount. It is conceded that Mary and Ellen received of the bank stock $44,400, which, deducted from the $94,905, leaves $50,505; and after deducting from the latter sum, as was done, the value of the real estate devised to Mary and Ellen,—$9,041.33, —there remained $41,463.67, which was to be made up to Mary and Ellen out of the sales of lands, and upon which it is admitted Marshall and Augusta paid interest under the latter agreement up to the date of the filing of the bill in this case.

The amended bill, on which the cause was heard, recited the principal facts of which mention has been made, and charges that the agreement of November 2, 1871, to make

equal division of the estate of the testator among the heirs, notwithstanding the will, was entered. into in consideration the suit commenced to contest the will should be dismissed, and that complainants would accept the terms proposed by the principal beneficiaries under the will and which had been verbally agreed upon, and that, for the purpose of carrying into effect the first agreement, the one dated the 19th of November, 1872, was executed by the parties interested in the estate.

The relief sought under the bill is, first, for compensation for lands devised to complainants to which the title has failed, or rather to which there was a total want of title in the testator; second, for an account of rents alleged to be in the hands of Marshall and Augusta, received from the lands of the estate and not accounted for, as required by the agreement to divide the estate equally; and, third, to correct the amount upon which defendants should pay interest to equalize the excess on the shares of bank stock between the parties, alleging it was erroneously assumed by defendants that the sum was $41,463.67, whereas it should have been $45,984.33, and charges it was upon the latter sum that defendants should have paid interest from the 2d day of November, 1871, instead of the former; asks to have the mistake in the computation in regard to the bank stock corrected, and fixed at the true amount, and that an account be taken of the unpaid interest.

The answers of defendants are not under oath, but they make an issue on every material allegation of the bill.

On final hearing the court found that the original agreement between the parties was supported by a sufficient consideration; that there was nothing due from defendants to the trustee for the *cestuis que trust* on account of rent; that there was due from defendants on account of the failure of title to lands devised to Mary Pool Docker, $80 and interest, making a total sum of $109.64, and that, under the agreement to divide the bank stock and equalize the excess, defendants became indebted to the trustee in the sum of $45,984.33; that the computation of the parties which ascertained such indebted-

ness to be $41,463.67, was erroneous, and that the interest due on the corrected amount was $1521.95. The decree orders defendants to pay the sums so found to the trustee for complainants, with costs of suit. The case is brought to this court on the appeal of defendants.

As to the finding of the amount due from defendants on account of the failure of the title to lands devised to Mary P. Docker, it is said the decree is erroneous, because it gives to both the real complainants the benefit of the amount found to be due, instead of Mrs. Docker alone. The objection is based on a misapprehension of the effect of the decree. Payment is to be made to the trustee, and it is for him to make the proper application. Whether the amount found should have been the entire value of the lands to which there was no title, or only one-half, we need express no opinion. As the court only found one-half the value of the land, it is not a matter that affects defendants, and complainants do not complain of the decree in that regard.

In respect to the finding of the court that there is nothing due from defendants on account of rents received from the lands of the estate, complainants have assigned no cross-errors, but it is insisted that, without any cross-errors, complainants may have that question reconsidered in this court. Such is not the practice. When neither party challenges the finding of the court as to any ground of relief in the case, it will be understood they do not desire to litigate that question further. It was said in *Carter* v. *Moses*, 40 Ill. 55, in chancery cases it is not necessary, in order to bring the whole case before the court, that cross-errors should be assigned. That may be; but where a party does not challenge, in some appropriate mode, a finding against him as to matters of relief, it will be taken that he acquiesces as to any other final decision. There can, therefore, be no reason why the decree, so far as the sum found due on account of failure of title to lands devised, and that nothing was due from defendants on account of rents received from lands belonging to the estate, should not be affirmed.

In regard to the question made, that equity has no jurisdiction to hear the cause, it may be said there are certainly two well known heads of equity jurisdiction to which the jurisdiction of the court in the case at bar may be referred,—first, mistake, and second, trust estate. Both elements are found in the present bill. It is sought, and that is the principal relief asked, that the mistake in the computation made by the parties in 1872, by which it was ascertained the excess of the bank stock was only $41,463.67, be corrected, and that when the true amount should be ascertained, defendants be decreed to pay interest on such sum. Corrections of mistakes in any transactions is a principal head of equity jurisdiction, and in this view the case at bar comes within the jurisdiction of a court of chancery.

Again, the title to the real estate of the testator to be divided under the agreement, was in defendants, in trust, in part, for the benefit of the real complainants, and defendants were obligated to account to their trustee for one-half the rents. It was the appropriate office of a bill in chancery to discover and compel an account of the rents to be taken. It is a familiar principle, that, when a court of equity has once obtained jurisdiction for any cause, it will retain that jurisdiction to do justice between the parties, although matters may be passed upon that, alone, would not be cognizable in a court of equity.

It may be assumed the first agreement as to the division of the estate between the heirs is executory, as it certainly is, in many of its provisions, but is it not founded on a valid consideration? As respects the events that led to the making of the agreement, the evidence is conflicting, but it is clear from the acts of the parties, about which there can be no controversy, the suit to set aside the will of the common ancestor never would have been abandoned and dismissed, had it not been for the making of the agreement for an equal division of the estate.

Before the will was opened, the parties understood to have

been cut off from any substantial participation in the estate began efforts to secure an equal interest in the estate with the other heirs more favored. At the next term of the circuit court after the will was admitted to probate, a bill was filed to contest it, and have it set aside. Counsel were employed, and every preparation made for a vigorous prosecution. It is hardly probable the effort would have been abandoned at the first term of court, except upon the definite understanding the agreement for an equal division of the estate would be executed, as it was, on the day the suit was dismissed. There was a contest between the parties, and the indications were it would be an earnest one, whether the will was valid, and should stand. The estate involved was large, and it was in settlement of the litigation concerning it we are authorized, from the acts of the parties, to believe the agreement was signed, and, in consequence, all further effort to set aside the will abandoned. It was the adjustment of a controversy as to large property interests, honestly inaugurated, and that has always been regarded as a sufficient consideration to support an agreement. *Honeyman* v. *Jarvis,* 79 Ill. 318.

But, aside from this view, complainants took upon themselves, in consideration of the execution of the agreement, an onerous burden, by way of the payment of a large sum of money semi-annually, for an indefinite period—to continue during the natural life of the beneficiary. The undertaking, in this regard, comes within the principle that one promise is sufficient consideration for another. *Cook* v. *Murphy,* 70 Ill. 96. There can be no doubt the agreement of the parties as to the division of the estate is founded on a valid consideration, and all the parties to it may be required to perform it. But these are minor questions in the case, and need not be elaborately considered.

The real contention is as to the construction of the agreement of November 19, 1872, as to the sum upon which defend-

ants are obligated by its terms to pay interest to equalize the bank stock between the parties.

Although this question has been elaborately argued, when all the provisions of both agreements are considered it does not present any great difficulty. If the real estate devised to Mary and Ellen, and the bank stock, constituted all the estate to be divided equally between the parties, then the position taken by complainants, and the computation insisted upon, would no doubt be correct. But there is other estate to be divided, and that is ultimately to be done on a basis of an "equal division, as near as may be, of the entire estate, real and personal." Such division of the estate has nothing to do with the rate of interest, nor upon what sum defendants shall pay interest, to equalize the excess of bank stock between the parties. That is a matter of contract. Let us, therefore, inquire what is the agreement of defendants in this regard, and what is their undertaking? In the agreement of November, 1871, there is nothing said as to interest on the excess one party may have of the bank stock. The number of shares each were to have was definitely agreed upon, and the trustee was to sell and convert into money so much real estate as might be necessary to equalize the interests of Mary and Ellen with Marshall and Augusta in the bank stock, and in case the proceeds of the sales of the lands should not be sufficient to equalize the interests of the parties, Marshall and Augusta were obligated to pay the deficit in money. Afterwards, when it was determined it was for the best interests of all concerned that the sale of such lands should be postponed for a time, it was then agreed that defendants should pay interest on the sum necessary to equalize the bank stock. But on what sum? That is to be determined by the written agreement that created the obligation, and by a fair construction of its provisions in the light of the circumstances under which it was executed. The agreement is, that, "until the shares of said bank stock are equalized as provided for in said original agreement, the parties hereto who have received an excess of said bank stock,

after deducting the value of the lands willed respectively to Mary * * * and Ellen, * * * as provided under said original agreement so to be equalized, shall respectively pay semi-annually to said trustee, for the use of those entitled thereto under said original agreement, interest at the rate of six per cent per annum."

The interest was to be computed from the 2d day of November, 1871, and was to be paid until the bank stock was equalized as provided in the original agreement, that is, from the sales of real estate. The contract for the payment of interest was certainly a favorable one for complainants.

Under the original agreement it was the duty of defendants to account to the trustee of complainants for one-half of the rents of the lands of the estate until the same should be converted into money with which to equalize the bank stock, and by the second agreement they took upon themselves the burden of paying semi-annual interest on the excess of bank stock in their hands. Certainly the burden ought not to be further increased by construction. But the contract was fairly and understandingly entered into, and by its terms the parties are bound. Construing the contract even strictly, it is plain it is on the excess of such stock " after deducting the value" of the lands devised to Mary and Ellen, that defendants assumed to pay semi-annual interest until the same should be equalized as provided in the original agreement. Construction can hardly make this paragraph of the agreement plainer than it is, but if explanation is needed, it is to be found in the contract.

In the next article of the agreement it is provided, that, as the " entire value of the lands" supposed to have been devised to Mary and Ellen is for the " present to be deducted from the estimated value of the bank stock," defendants obligated themselves to refund and pay the trustee for the use of the *cestuis que trust* the estimated value of the lands devised to them to which the testator did have title, with interest at six per cent per annum, to be computed with half yearly rests from the 2d day of November, 1871.

Again, in that clause of the original agreement which pro-vides a committee shall be selected to determine and fix the cash value of the lands willed to Mary and Ellen, it is ex-pressly declared, the amount, when so ascertained, shall be charged to them by way of equalizing their interests with those of Marshall and Augusta in the bank stock.

It will also be observed that in every paragraph of either agreement where the value of the lands devised to Mary and Ellen is mentioned, the entire value is to be deducted from the excess of the bank stock in equalizing the same between the heirs.   The value of such lands is to be treated as the equivalent of so much bank stock for the time being.   Whether the effect would be to divide this portion of the estate equally is not a question in the case, and the vice of the argument for complainants lies in the assumption these items of the estate must be divided equally.   It is the whole estate, and not merely these portions, that must be divided as nearly equal as may be.   Keeping this distinction in view the precise question in the case is easy of solution, viz: on what sum of the excess of the bank stock did defendants become obligated to pay in-terest?   That sum, as we have seen, is the excess after deduct-ing the entire value of the lands devised to Mary and Ellen, and nothing more.

There are equitable considerations that give sanction to this construction.   By a provision of the original agreement, the deficit of the amount due Mary and Ellen on account of bank stock was to be made up to them from the proceeds of sales of real estate, and until the shares of stock were so equalized, it was made the duty of defendants to account to their trustee for one-half of the net profits and rents of the lands of the estate under their control.   It does not appear that defendants had the use of the lands devised to Mary and Ellen, nor does it appear they had anything to do with them.   So far as this record discloses, they held and enjoyed them as their own lands, receiving the rents and profits if any were realized.   That may have been an equivalent for the interest on the

33—92 ILL.

excess of bank stock that would otherwise have come to them, and induced the making of the contract as it was. But be that as it may, nothing can be clearer than the proposition that defendants never contracted to pay interest only on the deficit of complainants' shares of bank stock that remained after deducting the value of the real estate devised to them, and there is no warrant for enlarging their undertaking by construction. Should we adopt the construction contended for, it would impose upon defendants the burden of paying interest on a large sum of money they never covenanted to pay, and to pay which they are under no legal or moral obligation.

That portion of the decree that finds the computation of the parties in 1872, which ascertained the indebtedness on account of the bank stock to be only $41,463.67, to be erroneous, and fixed the error at $4520.66, and allowed the sum of $1521.25 for interest thereon to date of decree, will be reversed, and so much of the bill as asks that the mistake on account of error in the bank stock computation be corrected and fixed at a sum different from that upon which defendants had been paying interest, will be dismissed. The decree in all other respects will be affirmed.

*Decree reversed in part, and in part affirmed.*

Mr. JUSTICE MULKEY took no part in the consideration of this case.