## Blandina M. Elting et al. v. The First National Bank of Biggsville et al.

1. CHANCERY JURISDICTION—*Administration of Estates.*—While County Courts in this State, sitting as courts of probate, have power to grant equitable relief in many cases, and to adjudicate the great majority of cases affecting the administration of estates, still a court of chancery may, in the exercise of its general jurisdiction, take upon itself the ad-

ministration of an estate and will do so in all cases where the Probate Court can not give adequate relief.

2. SAME—*Will be Retained for all Purposes when Properly Acquired.*—When a court of chancery has once properly acquired jurisdiction of a case it will retain that jurisdiction and do complete justice between the parties, although it may be necessary to pass upon matters which alone would not be cognizable in a court of equity.

3. ADMINISTRATORS—*Purchasing at Their Own Sale—Creditors may Complain.*—In a case where an heir or devisee of a deceased person is the administrator or executor of his estate, and a sale of real estate is made to him which is voidable, because of his fraud, a creditor whose rights have been prejudiced may invoke the aid of a court of equity and have the sale set aside, or the money realized from a subsequent sale declared to be held in trust for the payment of claims.

Bill, against an administrator for relief. Error to the Circuit Court of Henderson County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

## STATEMENT OF THE CASE.

On the 29th of March, 1885, Cornelius D. Elting died, in Henderson county, Illinois, leaving a personal estate of over $12,000, about seven hundred acres of valuable farm lands in Illinois and a section of land in Iowa. He left neither widow nor children. He devised by will all his estate, real and personal, after payment of debts, to his sister, Blandina M. Elting, of Orange county, New York, and named her and William L. Cuddeback as executors.

Cuddeback declined to accept the trust, but the sister coming on from New York immediately after the death of her brother, and taking up her residence at his home in Illinois, did accept, and letters were issued to her by the County Court of Henderson County, April 29, 1885.

At the time of his death deceased was heavily in debt; some of the indebtedness was secured by chattel mortgage on the most of his personal property, while other of his indebtedness was secured by mortgage upon his Illinois and Iowa lands.

After ascertaining the involved condition of the estate, the executrix returned to her home in New York, leaving

the entire settlement of the estate to a brother, Philip B. Elting, also a resident of New York, who, with another brother, Lewis B. Elting, had come on with her from that State.

A portion of the personal property was sold at private sale, and an order made by the County Court to sell the remainder of it at public sale. The greater portion of it was sold under that order, but the horses and farming implements were not so sold, but were used for farming the land on the executrix' own account, as were also oats and corn for seed and feed.

There was not sufficient personal property to pay indebtedness that had been probated, and in March, 1887, a petition was presented to the County Court, in the name of the executrix, for an order to sell the Illinois lands to pay debts. On the 21st day of that month an order was granted by the County Court for a sale of the land. It was advertised for sale in her name and on the 15th of April, 1887, her brother Philip bid off, in his own name, 500 acres and one town lot for $2,781.50. N. O. Tate and Charles Torrence bid off the undivided half of another tract for $320. Deeds were immediately made to all the purchasers.

Philip did not pay the amount of his bid on the day of sale but borrowed $11,383.95 of Robert Moir & Co. and secured the same by mortgage on three of the tracts bid in, and redeemed them from sales under mortgage foreclosure before them, paying therefor $11,832.15.

On the 18th of July, 1887, he sold the right of way over 20 acres of the lands bid in to a railroad company for $312.05, and on the 10th of December, 1887, he sold to one Charles Nelson 80 acres for $2,600, taking from him note and mortgage for sum of $2,282 and balance in cash. The Nelson note and mortgage he assigned to Moir & Co. taking credit for the same on the mortgage debt which they held against him.

Tate and Torrence bought the remaining undivided half of the eighty-acre tract, the undivided half of which they had bid off at the sale and sold the entire tract to Philip. This

tract Philip mortgaged to Moir & Co. to secure $2,000 December 22, 1887.

On the 4th of January, 1888, Philip conveyed to his sister, the executrix, all the land he had purchased at the sale and the lands procured from Tate and Torrence, for the express consideration of $10,400, subject to the two mortgages he had given to Moir & Co.

There was a partnership between the deceased, at the time of his death, and one Benjamin Warren, Jr., engaged in buying and selling grain at Scioto, Ill., which business was settled by the survivor and the attorneys of the executrix in such way as to fix an indebtedness against the estate in favor of the surviving partner of $192.71.

There was also a partnership between the deceased and one U. T. Douglas, in the elevator and grain business; Philip, acting for his sister, procured Douglas to sell the interest of deceased to N. O. Tate, who gave in exchange eighty acres of land in Fulton county, Ill. This land was conveyed to Blandina M. Elting in consideration of $1,600 subject to a mortgage in favor of F. C. Neil for $600. She charged herself with $400, received from Douglas in full settlement of the partnership, and afterward, on the 30th of March, 1889, conveyed the land to one Wilson Rector for $1,700.

On the 4th of December, 1889, she conveyed one quarter section of the land which was knocked off to her brother at the public sale ordered by the County Court, and which was afterward conveyed to her, to Mary S. Caldwell for $8,000. To the same grantee she, at another time, conveyed another quarter section of said land for $6,650. The land obtained through Tate and Torrence she conveyed to Emma Riggs for $6,800, $1,000 of which was paid her in cash, and $5,800 was secured by note and mortgage, which she subsequently assigned to her nephew, William L. Cuddeback.

After Philip had been managing the affairs of the estate over a year, he, without returning to New York, procured letters as executor of the estate of his mother, who had died

in that State eighteen years before; then, and as such exec-
utor, cited his sister, as executrix of the estate of Cornelius
D. Elting, to appear before the Surrogate Court of Orange
County, New York, and render an account of the doings of
her testator while he was acting as executor of his mother's
estate. The result of that proceeding was a decree of that
court requiring her, as executrix of Cornelius D. Elting, to
pay to Philip $6,174.21. On the 6th of April, 1887, the
executrix still remaining in New York, a year having passed
after adjustment day, and her appearance having been
entered by attorneys, a judgment was allowed by the County
Court of Henderson County on that transcript for $6,164.21
as a claim of the sixth class against the estate.

On the judgment so obtained Philip redeemed from a
mortgage sale before then made of the W. ½ S. W. ¼, Sec.
30, T. 8, N. 3 W., in Warren county, and said land was sold
and bid in by Philip for the redemption and a deed made to
him. He paid for redemption $2,106.91, and shortly after
sold the same land for $2,800.

On October 18, 1887, letters were issued to one W. B.
Quarton, in Kossuth county, Iowa, on the estate of Corne-
lius D. Elting, that being the county where the Iowa land
was situated. Claims were there allowed by consent of
Quarton to amount of $12,000. Among them was the above
mentioned claim of Philip Elting as executor. The other
claims were filed by Blandina and the Cuddebacks. The
section of Iowa land was sold under a decree of the Iowa
court.

The claims allowed against the estate by the County
Court of Henderson County amounted to about $11,000,
exclusive of the claim of Philip B. Elting, executor of Anna
M. Elting. About $2,000 of them were claims of the first,
fifth and sixth class, and about $9,000 of the seventh class.

None but first and fifth class claims, which amount to
$246, have been paid.

In December, 1892, creditors who had probated their
claims, but had not been paid, began this suit in chancery,
praying that the judgment allowed by the County Court in

favor of Philip B. Elting, executor, etc., be annulled; that the purchase of Philip at the public sale of the lands be declared fraudulent; that both he and Blandina M. Elting be required to account for all made by them on a resale of the lands; that a judgment be rendered against the sureties on her bond as executrix; that Mary S. Caldwell and Emma Riggs be ordered to pay into court balance due on their purchase of lands for her, and that the accounts of the executrix be corrected, etc.

Upon a hearing the Circuit Court set aside the judgment allowed in favor of Philip B. Elting, executor, etc., ordered that he and Blandina M. Elting account for all they had made out of the real estate of the deceased, that a statement of her account as executrix be made, and that the case be referred to the master to restate the account.

KIRKPATRICK & ALEXANDER, attorneys for plaintiffs in error.

BASSETT & BASSETT, attorneys for defendants in error.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This writ of error is prosecuted for the purpose of reversing a decree of the Circuit Court of Henderson County, setting aside the order of the County Court of said county, allowing a claim of $6,164.21 in favor of Philip B. Elting, executor, etc., against the estate of Cornelius D. Elting; ordering the said Philip B. Elting and Blandina M. Elting to account for all money made by them on the sale and resale of certain lands of which Cornelius D. Elting died seized, with certain rents made thereon, and ordering a restatement of the accounts of Blandina M. Elting, as executrix of the estate of Cornelius D. Elting.

The decree was rendered at the suit of creditors holding unpaid claims to the amount of $10,000, which had been allowed against the estate of Cornelius D. Elting by the County Court. Equitable interference and relief was sought

by them upon the ground that the executrix and her brother had fraudulently and collusively managed the affairs of the estate, and had so made way with the property as to leave nothing with which to pay off the complainants' claims.

The first point of contention raised by counsel for the plaintiffs in error is one of jurisdiction. They insist that the County Court was clothed with ample power to correct any order erroneously made concerning the administration of the estate, to compel a restatement of the accounts of the executrix, and to make any order for the relief of creditors which would fall within the case presented by the bill of the defendants in error; and having first acquired jurisdiction, could not be ousted of it by the interference of a court of chancery.

While the jurisdiction and power of Probate Courts in this State have from time to time by legislative enactment been enlarged and extended, and our Supreme Court has gone far to maintain them in granting equitable relief on many questions affecting the administration of estates, still chancery jurisdiction exists in all cases where the Probate Court can not grant adequate relief. Townsend v. Radcliffe, 44 Ill. 446; Winslow v. Leland et al., 128 Ill. 304; McCreary v. Meyer, 64 Ill 495; Cohen v. Menard, 136 Ill. 130.

The chief ground on which a court of equity should take jurisdiction of this case is the fraud and collusion charged against the executrix and her brother in selling and disposing of the real estate for her benefit. We regard the manipulations by which she, through her brother, procured the sale of the real estate and the subsequent vesting of the title in her as fraudulent and a breach of trust. While there are a number of matters adjudicated upon in this case in which the County Court could have given adequate relief, yet having rightfully acquired jurisdiction upon the ground above mentioned, the Circuit Court had jurisdiction to pass on all questions mooted between the parties. That is done in the interest of justice in all cases where a court of chancery acquires jurisdiction, although it may involve passing

upon matters not by themselves cognizable in a court of equity.    Poole et al. v. Docker et al., 92 Ill. 501; Stickney v. Goudy, 132 Ill. 213.

We do not care to extend this opinion to the length which would be required in discussing in detail the very numerous findings on which the decree was based.    We are content to say that the evidence abundantly satisfies us that the executrix colluded with her brother for the purpose of having the lands sold at public sale, at which he should become the purchaser, or so manipulating subsequent sales as to vest the title in her.    We do not think the sale should be held fraudulent for the reason alone that Philip was her general agent in winding up the affairs of the estate, and that when he bid off the land it should be regarded as her bid.    The conduct of the two parties, all taken together, leads us to the conclusion that it was their common purpose to so dispose of the effects of the estate as to appropriate as much of it to their own use as possible and leave unsecured creditors not paid.

The right of a creditor to attack such a sale is on the ground that the executor or administrator, through another, was the purchaser in question.    It is insisted that as the heir succeeds to the land and the creditor has no interest other than in the fund arising from a sale of it by the representative, that in a case where the representative has purchased at his own sale he can not be held to be a trustee of the creditor.    While it is true that in all the reported cases from our Supreme Court, where such sales have been held fraudulent and voidable they have been held so at the suit of heirs, we are of the opinion that in a case where the sole heir or devisee is the administrator or executor and the sale is held voidable because of his fraud, a creditor whose rights have been prejudiced, may invoke the aid of a court of equity to the extent of having the sale set aside or the money realized out of a subsequent deal of the land declared to be held in trust for the payment of his claim.

We approve the action of the Circuit Court in finding

that the allowance of the preferred claim for $6,164.21 in favor of Philip B. Elting, executor of the estate of his mother, Anna M. Elting, was obtained by the fraud and connivance of Philip and Blandina. The mother had been dead nearly twenty years. Cornelius D. Elting had a continuous residence in Illinois of fifteen years before his death. He was a large holder of property, both real and personal. Two years after his death and seventeen years after he had left New York, Philip, the manager of his estate in Illinois and a resident of Illinois, procures himself to be appointed executor for his mother's estate in New York, has Blandina, without being appointed executor in that State, appear before the Surregate Court of Orange County, New York, and such proceedings were had that a judgment was entered against her as executrix of Cornelius D. Elting for $6,164.21. Under the circumstances the Circuit Court was warranted in finding that the claim was fictitious, and in decreeing that its allowance here was void.

The court rightfully decreed that Emma Biggs should not pay to Blandina or William L. Cuddeback the balance of the purchase money for land, owing by her, and that they be enjoined from attempting to collect such purchase money until after an accounting was had and the further order of the court made.

The case now stands on reference to the master in chancery to take evidence and restate the account.

There are several matters discussed in the briefs, concerning which further evidence may be heard, and it is not necessary that we express our views upon them. After the master presents his report the court will make such final orders as to him may seem meet and equitable.

As to such matters appearing in the findings and decree as are final we affirm. Decree affirmed.