|115   479|
|a214s  30'

## Trustees of Schools, etc., et al., v. Board of School Inspectors of the City of Peoria.

### Gen. No. 4,406.

1. ANNEXED TERRITORY—*jurisdiction of chancery to determine status of*. Upon proper allegations, a court of chancery has jurisdiction to determine whether certain territory has been properly annexed. (School Directors of Union School District v. School Directors of New Union School District, et al., 135 Ill. 464, followed.)

2. ANNEXED TERRITORY—*status of, with respect to public school system*. Where territory is duly annexed pursuant to law, it immediately upon such annexation comes under the power, control and jurisdiction of the municipality to which it is annexed, for public school as well as for other purposes.

3. ENTIRE CONTROVERSY—*jurisdiction of chancery to determine*. Where a court of chancery has properly acquired jurisdiction for one purpose, it will retain it until it has done complete equity between the parties, although to do so purely legal matters must be determined.

4. GENERAL INCORPORATION ACT—*effect of municipality adopting*. The adoption of the General Incorporation Act by a city or village which had previously been incorporated by a special charter, does not thereby necessarily forfeit all its rights or relinquish all its powers theretofore enjoyed under such special charter; it is only such provisions of the charter as are inconsistent with the general act that are abrogated.

5. TAXES—*what, will not be diverted from channels for which they were levied*. Where taxes have been paid for school purposes without objection or protest, their use for the purposes for which they were levied and designed will not be prevented by any mere technical objections as to the manner in which the levy was made.

Bill in chancery to determine status of annexed territory, etc. Error to the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

ARTHUR KEITHLEY, for plaintiffs in error.

480     APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Trustees of Schools v. Board of School Inspectors.

McCULLOCH & McCULLOCH, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This writ of error is sued out to the Circuit Court of Peoria, and brings up for review the decision of the court in overruling a demurrer to a bill in chancery filed in said court by the Board of School Inspectors of the City of Peoria.

Plaintiffs in error electing to stand by their demurrer, a decree *pro confesso* was rendered substantially according to the prayer of the bill. Since the sole question presented is the sufficiency of the bill to entitle defendant in error to relief, it will be necessary to set out the essential averments of the bill. These allegations, which for the purpose of the determination of this case must be regarded as true, are as follows: that the Board of School Inspectors of the City of Peoria is a body politic and corporate, existing under and by virtue of an Act of the General Assembly of the State of Illinois entitled "An Act to reduce the charter of the City of Peoria and the several Acts amendatory thereof into one Act and to revise the same," approved February 20, 1869, and exercising all the powers therein conferred, together with such other powers as have since then been conferred by general or special law; that among other powers it has power to erect, hire and purchase school buildings suitable for school houses, and to keep the same in repair; to buy or lease school houses with the necessary grounds; to furnish school houses with what they shall deem necessary furniture, fixtures and apparatus; to establish, support and maintain public schools for all the children in the city and determine the rate of taxation for school purposes in the manner therein provided; and generally to have and possess all the rights, powers and authority necessary for the proper management of the schools and the funds belonging to the city for school purposes, with power to make all such rules and ordinances as may be necessary to carry their powers and duties into effect and perfect a good system of public instruction and schools in said city; that the said Board of School Inspectors

of the City of Peoria consists of the mayor of said city and two members from each ward who shall be residents of their respective wards; that outside of the city of Peoria and within the township of Peoria there is certain territory not otherwise supplied with school facilities than is in said Act stated, which said outlying territory is, for school purposes, embraced within the jurisdiction of the city of Peoria and of the said Board of School Inspectors; that the Board of School Inspectors is the only board of authority having power and authority to manage the schools and funds belonging to the said city for school purposes; that the south half and the south half of the north half of section number thirty-three, the southwest quarter and the south half of the northwest quarter of section number thirty-four and part of the southeast quarter of section number thirty-four, are embraced within the jurisdiction of the city of Peoria for all municipal and school purposes, and that the authority and jurisdiction of the city of Peoria is now extended over and is being exercised within the same; that the territory last described, together with the north half of the northwest quarter of section number four in Peoria township, prior to the 13th day of October, 1900, was organized into a village called the Village of North Peoria, which had been duly organized and was then exercising all the powers conferred upon villages of that class under the general corporation laws of the State of Illinois; that such proceedings were had in the County Court of Peoria County at the August term, 1900, that the territory embraced within the Village of North Peoria was annexed to and became a part of the territory of City of Peoria; the annexation proceedings are set out at large in the exhibits to the bill, and are conceded to be regular and valid; that immediately after such annexation, the city of Peoria assumed, and still exercises full and complete jurisdiction over said territory so annexed, without any objection whatsoever; that at the time of the annexation there existed in the adjoining portion of Richwoods Township two certain districts numbered 4 and 5, a portion of

each of which was embraced in the territory so annexed. A description of districts Nos. 4 and 5 as they were before the annexation, and that portion of each that was annexed to the city of Peoria by the proceedings above referred to, is set out in the bill.

The bill then alleges that the territory so annexed was divided into smaller tracts, town lots, streets and alleys of divers names and subdivisions and additions, by which names they were entered upon the assessor's books of Richwoods Township, and assessed for taxation according to such descriptions; that in each of the said school districts, Nos. 4 and 5, and in the parts thereof annexed to the city of Peoria, there was a school house sufficient to accommodate all the children of school age entitled to attend the same from each of said districts 4 and 5, and that soon after said annexation, and with the consent of the directors and the Board of Education, respectively, of said districts 4 and 5, defendant in error took possession of said school houses and extended its authority and control over said territory so annexed to the city of Peoria, and from that time until now has been and still is exercising undisputed authority over the same, except as in said bill stated. And during all that time it has provided public school facilities, not only for all the children entitled to the same residing in the territory so annexed, but also for all the children residing in and formerly entitled to attend said schools in all the territory theretofore embraced in said districts 4 and 5, and has paid all of the expenses of maintaining and conducting public schools in the said two school houses, and that, except the two schools kept and maintained in said two school houses, there has, during all that time, been no other schools kept within the territory formerly belonging to said two districts, either within or without the annexed territory. That it is the duty of the city council to levy a tax, not exceeding two and one-half per cent for general school purposes, and two and one-half per cent for building and repairs of buildings, which levy is only made upon the official request of the defendant in error, which tax when so

levied is to be extended and collected as other city taxes; that in June, 1901, defendant in error adopted a resolution requiring two per cent to be levied for the year 1901-2 for school purposes, and three-quarters of one per cent for building and repair of buildings, and that on August 6 the city council passed an ordinance levying the taxes as required by the resolution of defendant in error.

The bill alleges that through inadvertence and mistake and without any knowledge on the part of defendant in error, said ordinance was so drawn and passed as to apparently apply only to the taxable real estate and personal property in township 8 north, range 8, east of the fourth principal meridian, and not to the territory so annexed, which mistake was not discovered by defendant in error until after it had been at the expense of maintaining and supporting the said two schools in the annexed territory for the entire school year of 1901–1902. A copy of the ordinance is filed as an exhibit with the bill, and the title of the ordinance is as follows: "An ordinance levying a school tax for the city and township of Peoria, in the State of Illinois, for the ensuing year 1901–1902." In the body of the ordinance the levy is upon the real estate and personal property in township 8 north, range 8, east, Peoria county. The bill alleges that notwithstanding said error and omission, the county clerk, in making up the tax books for the township of Richwoods for the year 1901, did extend a school tax upon the real estate and personal property subject to taxation in the said annexed territory at the rate of two and three-fourths per cent upon the assessed valuation, and having so extended the same, placed the said books in the hands of the township collector of Richwoods for the purpose of having said tax collected.

The bill alleges that after the filing of the said ordinance with the county clerk, and on the 8th day of August, 1901, a certain paper was filed with the said county clerk purporting to be a certificate of levy made by certain persons claiming to be directors of district No. 4 in Richwoods, requiring the amount of two and one-half per cent of the

484    APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Trustees of Schools v. Board of School Inspectors.

assessed valuation to be levied as a special tax for school purposes, and one-fourth per cent for building purposes on the taxable property of said district for the year 1901; that about the same day another paper was filed with the county clerk purporting to be a certificate of levy made by the Board of Education of district No. 5 of Richwoods township, requiring the amount of two and one-half per cent on the assessed valuation to be levied, and a special tax for school purposes, and one-fourth of one per cent for building purposes, of the taxable property of said district for the year 1901, copies of which papers are attached to the bill as exhibits; that after the filing of the said several levies, there was a renumbering of the districts by which No. 4 became No. 114, and No. 5 became No. 115, but defendant in error alleges that neither of said boards had any power or authority to levy school taxes within the annexed territory; that in making out the tax books for the collector of Richwoods township, the clerk extended the tax of two and three-fourths per cent upon all taxable property of said districts Nos. 4 and 5, but in designating the same upon said tax books the said clerk designated all the school taxes that were levied and assessed upon the real and personal property in the territory formerly constituting district No. 4 as taxes belonging to district No. 114, and all the school taxes levied upon property taxable in the territory formerly constituting district No. 5 as taxes belonging to district No. 115, by reason whereof the tax to which defendant in error was entitled, if any, had become confused with those to which the newly numbered districts, Nos. 114 and 115, would be entitled, and no designation was made by the said clerk of the tax to which defendant in error would have been entitled as having been levied upon the annexed territory.

It is then charged that the amount of taxes as levied in districts 114 and 115 was collected, and that the aggregate amount so collected from that portion of said districts that had been annexed to the city of Peoria cannot be definitely stated by defendant in error but it is stated ap-

proximately to be $7,920.75. (Afterwards-the parties stipulated that the exact amount was $8,230.02, neither party waiving any rights by said stipulation, except to question the amount of the funds in dispute.) The bill then repeats the averment regarding the levy for the year 1901 except it is applied to the year 1902; in the ordinance making the levy for this year, the annexed territory was specifically described; charges that the levying power of districts Nos. 114 and 115, again made a pretended levy of two and three-fourths per cent as had been done the year before, with the purpose of hindering and harassing defendant in error in the discharge of its duties, and charges that the plaintiffs in error set up claim and right to said funds, and that the treasurer has the funds and refuses to pay them over to the defendant in error.

The prayer is that the court find and determine that the annexed territory is within the jurisdiction, management and sole control of the defendant in error; that the city of Peoria has the sole power to levy and collect taxes for school purposes in said annexed territory; that the taxes collected for the year 1901 be declared to belong to the city of Peoria, and ordered paid over to it; and that defendant in error be decreed to be entitled to the share of the state, county and township funds which have been distributed to said districts 114 and 115, and that the tax levies made by the officers of the said districts for the year 1902, in so far as they relate to the annexed portion of said districts be declared null and void, and that the plaintiffs in error be enjoined from all acts seeking to divert any future taxes collected for school purposes in said annexed territory, and from exercising any jurisdiction or authority over the schools of said territory.

It is clearly the purpose of defendant in error to secure an authoritative determination of the status of the annexed territory for school purposes, and incidentally to have the right to the money now in the hands of the officer determined between parties.

That a court of equity has jurisdiction in this case we

486    APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Trustees of Schools v. Board of School Inspectors.

regard as settled by School Directors v. School Directors, 135 Ill. 464; and having obtained jurisdiction for one purpose a chancery court will retain it until it has done complete equity between the parties, with respect to the subject of dispute, although to do so purely legal matters must be determined. Pool v. Docker, 92 Ill. 501; City of Peoria v. Johnston, 56 Ill. 45; County of Cook v. Davis, 143 Ill. 151; Longshore v. Longshore, 200 Ill. 470.

The controlling question is whether the territory lying within the former limits of North Peoria which is within the boundaries of districts Nos. 114 and 115 by the annexation of North Peoria to the city of Peoria was made a part of the city of Peoria for school purposes.

The city of Peoria is operating her schools under a special law, enacted as an amendment to the charter of the city in 1855; this act took effect February 14, 1855, and on February 15 of the same year the general free school law went into force. This general school law did not repeal any special school law in cities and incorporated towns, but they were expressly excepted from its provisions. See section 82, School Act 1855.

The special act establishing the school system of Peoria is entitled "An act to amend the charter of the City of Peoria, and to establish and regulate a system of Public Schools in said City." Among the other provisions of this amendment to the charter was one providing for the election, by the qualified voters of the city of Peoria, of seven inspectors of schools, residents of said city, to be known and be nominated the "Board of School Inspectors," who were to hold their offices for two years and until their successors were elected and qualified. All powers usually exercised by a board of education and school directors were vested in the board of inspectors. The power to levy taxes for school purposes was reserved to the people and was exercised by a direct vote once a year. The city charter was amended from time to time, many of which amendments relate to the school system, but in all of the amendments the board of school inspectors was retained, with all

such general power as was necessary to give the board complete control of the schools of the city. In 1857 the number of inspectors was raised to nine, and their power enlarged so that the board could hold and convey real estate; the board then became trustees of the township and the office of trustee was abolished, or rather the duties were transferred to this board of trustees of township 8 north, range 8 east, by which names they were made a body politic and corporate, and the board was given all the powers formerly exercised by the board of trustees, in addition to the powers already conferred on the inspectors. The power of the board of inspectors, under the new corporate name, was extended to the entire township, except the power to levy taxes was reserved as before to the people within the city, and by a board of school directors in the outlying districts of the town.

The city of Peoria is authorized to borrow money to build school houses and issue bonds to be paid by taxation on the property of the city.

The boundaries of the city of Peoria were enlarged by an act of the legislature in 1861,·(Private L. 1861, p. 244,) and the board of school inspectors assumed control and jurisdiction over the added territory, and it was thereafter treated as a part of the city of Peoria for school purposes. In 1863 the limits of the city were extended to embrace the entire township and the board of inspectors then assumed full jurisdiction of all the territory for school purposes and the board of school directors in outlying districts ceased to exist. In 1867 another change occurred in the territorial limits of the city. Portions of the territory that had been added in 1863 were detached by this act, but by express provision of the law of 1867 (3 Pr. L. 1867, p. 36) the board of school inspectors was continued in control of the detached territory for school purposes, and required to maintain in said territory, schools sufficient to accommodate all children in such territory of school age, in the same manner and for the same length of time as are provided for children in the city.

488    APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Trustees of Schools v. Board of School Inspectors.

From these various acts of the legislature, together with others not herein mentioned, it will be seen that the municipal laws of the city of Peoria relating to the schools, as well as other subjects, are scattered through the session laws of the state, both public and private, from 1855 to 1867, almost every session of the legislature making a contribution to the confused mass of municipal regulations. In this state of the law the legislature of 1869 passed an act of great importance and benefit to the city of Peoria. Its title is "An act to reduce the charter of the city of Peoria, and several Acts amendatory thereof, into one Act, and to revise the same." By this act the city is given a complete charter, which is found in volume 2, Private Laws, 1869, from page 113 to page 179. Chapter 13 of said act, found on page 168, is devoted to the subject of public schools, and has a subtitle, "Public Schools, Board of School Inspectors." Section 1 of chapter 13 makes the board of school inspectors a body politic and corporate with perpetual existence under the name of "The Board of School Inspectors of the City of Peoria," with power to acquire, hold and dispose of property, real. personal and mixed. Section 2 provides that the board shall consist of the mayor of the city and two members from each ward, and provides for the manner of the election and the term of office. The members of the board are to be elected by the voters of the city of Peoria and by those residing outside the city limits who are in the town of Peoria. (See sec. 4 of Act.) This board is authorized to elect one of its members president and appoint a secretary and treasurer. Section 8 defines the powers of the board of inspectors, and includes all the powers necessary to enable the board to establish and maintain a system of free public schools. By the second clause of section 1 of chapter 7, page 149, of said act the city council is given power to levy an annual tax of not exceeding 6 mills on the dollar, on all property liable to taxation in township 8 north, range 8 east, in Peoria county, for the purpose of meeting the expense of repairing school houses and maintaining and supporting

schools. Section 12 of chapter 13 provides that the board of inspectors shall annually determine the amount of money that will be required to meet the expenses of the public schools and certify the same to the city council, whose duty it is to see that the same is levied, collected and paid over to the treasurer of the board. Section 16 abolished the office of school trustees in the township and devolved the duties of the office on the board of inspectors, which succeeded to the title of all school property held by the trustees. Section 17 provides a method by which the city of Peoria can borrow money and issue bonds for the same to enable the board of inspectors to provide additional school buildings in the city. Section 19 provides that "the laws now in force or to be hereafter enacted by the legislature of the state, for the purpose of creating a public school system, shall not be construed as repealing, altering or changing any of the provisions of this Act, unless specifically provided for." Section 21 repeals the act of March 6, 1867, which relates to the schools in the township of Peoria.

We have recited these several provisions of the law of 1869, for the purpose of showing (1) that the act purports to establish a system of public schools in and for the city of Peoria, and the township outside the city, which is a complete scheme in itself and wholly outside and independent of the general school law of the state, and (2) to show that the public school system of the city of Peoria is not outside of the city government, but is distinctly one department of its municipal government, which being inseparably connected with its welfare, and promotive of the greatest good to the inhabitants thereof, it could not refuse to maintain, if it desired to, and still have any claim to corporate existence for any other purpose. The city of Peoria continued under this special charter until 1887, when it adopted the general law providing for the incorporation of cities and villages. Because of this change from its special charter to the general law it is contended that the old charter of 1869 was abrogated and that even if the public

490    APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Trustees of Schools v. Board of School Inspectors.

school system was a branch of the municipal government, under the charter, the branch could not survive the charter itself, and when the charter gave way to the general law the public school system passed out with it. This position cannot be sustained. The adoption of the General Incorporation Act by a city or village which had previously been incorporated by a special charter, does not thereby necessarily forfeit all his rights or relinquish its powers theretofore enjoyed under its charter; it is only such provisions of the charter as are inconsistent with the general law that are abrogated. Hurd's R. S. 1893, ch. 24, sec. 6, page 283.

The question of what powers, existing under special charter, were still retained and what were annulled by the change of organization from a special charter to the general law has been often presented and decided in this state. Among the cases of this character, having special reference to the question here involved, are Speight v. People, 87 Ill. 595; Fuller v. Heath, 89 Ill. 296; Smith v. People, 154 Ill. 58; Brenan v. People ex rel., 176 Ill. 620; C., C., C. & St. L. R. R. Co. v. Randle, 183 Ill. 364. The case last cited is one where the special charter provisions of the city of Litchfield appear to be very similar to the one at bar, and it is held that the adoption of the general law did not abrogate the charter regulations concerning public schools, and that the same were continued in force, except in so far as they were modified by the act of March 31, 1891, (L. 1891, p. 197,) relating to the limit of the rate of taxation for school purposes. This is the only change in the special charter made either by the change of organization or by the general school laws of the state. (See cases above cited.)

The public school system of the city of Peoria being established as a department of its municipal government, and the same still being in existence by virtue of its special charter, did the annexation of the city of North Peoria have the effect of bringing into the jurisdiction of the defendant in error the annexed territory for school purposes? The annexation was made under the law of April 25, 1889. (Public L. 1889, page 66.) This statute points out a method

by which one incorporated town, city, village, or parts thereof may become annexed to another incorporated town, city or village. When the statute has been complied with and annexation is effected according to the statute, it would seem to require no authority to show that the annexed territory would immediately come under the power, control and jurisdiction of the municipality to which it was attached.

In the case of McGurn v. Board of Education, 133 Ill. 122, it was held that by the act of annexation the board of education of Chicago were vested with control and jurisdiction over the public schools in the village of Hyde Park, which had been annexed under the law of 1889 to the city of Chicago. In this case it is said : "The annexation of territory to a municipality does not carry with it the necessity of formulating a code of municipal laws for the government of the territory annexed. By becoming a part of the municipality, it is, *ipso facto*, brought under and made subject to all the laws by which the municipality is itself governed. These laws extend over and apply to it *ex proprio vigore*, and do not require express legislative action to give them such application." To same effect is Cravener v. Board of Education, 133 Ill. 145. Again in The People v. Harrison, 191 Ill. 257, it is said : "We are free to admit that, in the absence of countervailing legislation, the ordinance of the city of Chicago, upon the annexation of Hyde Park, *eo instanti*, of their own vigor, extended to and became operative over the annexed territory, and from that instant the territory annexed became a constituent part of the city, and subject to the same laws, the same municipal organization and the same polity which the statutes in force had already provided for the government of the city and its institutions."

We do not regard the position assumed as to the manner of levying the tax as tenable; the tax has been paid and the money is now in the hands of one of plaintiffs in error. It does not belong to him, nor to any of the plaintiffs in error, and the taxpayers having voluntarily paid this

tax for school purposes it should not be diverted from its proper channel by technical objections to the manner in which the levy was made.

It follows from what has been said that the board of school inspectors of Peoria have full and complete control and jurisdiction in the annexed territory, and that the funds in the hands of the treasurer belong to defendant in error, and that the decree of the Circuit Court overruling the demurrer was proper, and the same is accordingly affirmed.

*Affirmed.*