The People *ex rel.* Board of School Inspectors

*v.*

Alfred E. Mottinger, County Clerk.

*Opinion filed April 17, 1905.*

1. Schools—*when city's power to tax for school purposes is not repealed.* The taxing power for school purposes conferred upon the city council of Joliet under the special act of 1857 is not taken away by reason of the city's organization under the general Incorporation act nor by any provision of the general School law.

2. Same—*act of 1893, extending powers of school inspectors, does not confer the power to tax.* The act of 1893, (Laws of 1893, p. 176,) extending the powers of school inspectors elected under special acts, does not confer taxing power upon school inspectors elected under a special act which lodges that power in a different body.

3. Taxes—*the taxing power must be conferred in clear terms.* Taxing power should not be held to exist in a body seeking to exercise that power unless it is conferred upon such body by clear and unequivocal terms.

Appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

E. Meers, for appellant.

James A. McKeown, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a petition for a writ of *mandamus* to compel the county clerk of Will county to extend a tax of $118,700 upon the certificate of the board of school inspectors of the city of Joliet. The court sustained a demurrer to the petition and dismissed the same, and an appeal has been prosecuted to this court.

It appears from the petition as amended that the board of school inspectors of former districts No. 1 and No. 2, now district No. 86, of the city of Joliet, on August 1, 1904, made a tax levy of $98,700 for school purposes and $20,000 for building purposes for the current school year, and filed a certificate thereof with the treasurer of schools of the township of Joliet, who delivered the same to the county clerk; that the city council of the city of Joliet also made a tax levy for the same year of $95,188.87 for school purposes and $20,-000 for building purposes, and filed a certified copy of the ordinance making such levy with said county clerk, and that the county clerk is about to extend said taxes under the tax levy made by the city council instead of that made by the board of school inspectors. The object of the suit is to compel the clerk to extend said taxes under the tax levy made by the board of school inspectors, and it is agreed the sole question presented for decision is, does the taxing power in said school district rest in the city council or in the board of school inspectors?

The legislature on January 31, 1857, passed an act entitled "An act to reduce the law incorporating the city of Joliet and the several acts amendatory thereof into one act, and to amend the same." (Private Laws of 1857, p. 188.) Chapter 11 of said act is entitled "Schools," and section 1 divides the city into two school districts. Section 2 provides for the election of three school inspectors in each of said districts; section 3, that all school property belonging to the several school districts within the city shall be vested in the city for school purposes; section 4, that the common council

215—17

shall have power to build, erect, repair, purchase, hire and lease buildings for school houses and other school purposes, and to buy, condemn and appropriate or lease sites and lots for school houses and necessary grounds; to furnish schools and school houses with necessary libraries, furniture and apparatus, fixtures, appurtenances and conveniences, and to establish and maintain schools, and to levy and collect taxes for the payment of teachers and all other expenses necessary for the proper support of such schools; to fix the amount of compensation to be allowed to teachers; to prescribe the school books to be used and the studies to be taught in the different schools; to demand and receive from the trustees of schools and from the treasurer of schools the interest on the school fund, and such other funds as the school districts of said city or the scholars therein are now or hereafter may be by law entitled to receive, and generally to have and possess all rights, powers and authority necessary for the proper regulation and management of said schools in said city, and to enact and enforce such ordinances, by-laws and regulations as may be necessary to carry said powers and duties into effect. Section 5 prescribes the duties of the board of school inspectors; and section 6, that territory outside the corporate limits of said city shall form a part of each of said school districts, and confers upon the city council jurisdiction over said territory for school purposes, with power to levy taxes therein.

It will be observed the powers conferred upon the city council relative to said school districts are broad and comprehensive, and that the right to levy taxes for all school purposes in the territory comprised within the boundaries of said districts is clearly conferred upon the city council of said city, and such power having been conferred by said act upon the city council, it must be held to now exist, unless it has been taken away by the legislature by a repeal of said statute. It is not claimed that the taxing power for school purposes conferred upon the city council by the act of 1857

has been taken away by express enactment, but the contention made is that said statute has been repealed by implication. The rule is well settled that repeals by implication are not favored, and in *People* v. *Brown,* 189 Ill. 619, on page 622, it was said: "The presumption always obtains that the legislature by a general law does not intend to abrogate the provisions of a prior act relating to a special subject, and that such repeal will only be effected when there are no negative words, unless it is impossible for the two acts to stand together." And in *Village of Ridgway* v. *Gallatin County,* 181 Ill. 521, on page 526, it is said: "A subsequent law which is general does not abrogate or repeal a former one which is special and intended to operate upon a particular subject, and that if the later statute does not contain negative words it will not repeal the particular provisions of the special law on the same subject, unless it is impossible that both should be enforced."

The city of Joliet in 1876 organized under the general Incorporation act of 1872, entitled "An act to provide for the incorporation of cities and villages." That act, however, we do not think deprives the city council of the city of Joliet of the power to levy taxes for school purposes conferred upon it by the act of 1857, as the subject of the levy of taxes for school purposes is not mentioned in that act, and section 6 of article 1 thereof provides, in express terms, that all laws or parts of laws not inconsistent with the provisions of said act shall continue in force and applicable to any such city or village the same as if such change of organization had not taken place. (Hurd's Stat. 1903, p. 283.) In *Smith* v. *People,* 154 Ill. 58, it was held that the adoption by a city of the general law for the incorporation of cities and villages does not abrogate the provisions in such city's former special charter for the establishing and managing of a system of schools, as such provisions are not inconsistent with anything in said general law, as that act contains nothing relative to schools, and the case of *Trustees of Schools* v. *Board*

*of School Inspectors,* 214 Ill. 30, is to the same effect. Neither do we find anything in the general School law inconsistent with the provisions of chapter 11 of the act of 1857, so far as said act provides for the levying of taxes for the maintenance of schools by the city council of said city.

It is, however, contended, if it be held that the powers of taxation conferred upon said city council are not abrogated by the adoption of the City and Village act or by the general School act, that the act of 1893, entitled "An act extending the powers of boards of school inspectors elected under special acts," (Hurd's Stat. 1903, p. 1714,) is so far inconsistent with the provisions of chapter 11 of the act of 1857 that the power to levy taxes for school purposes in said district can no longer be held to exist in the city council of said city. By section 1 of said act it is provided that in school districts similarly situated to said district No. 86 "the board of school inspectors in addition to the other powers given by such special law, and the general school laws, shall have power to employ teachers, janitors and such other employees as such board shall deem necessary, and to fix the amount of their compensation; to buy or lease sites for school houses, with the necessary grounds; to build, erect, lease or purchase buildings suitable for school houses; to repair and to improve school houses, and to furnish them with the necessary supplies, fixtures, apparatus, libraries and fuel, and it shall be the duty of such board to take the entire supervision and control of the school in such district or districts."

While the power conferred upon boards of school inspectors with reference to the control and management of schools and school property is greatly increased by said section 1 of said act, that section does not control, in school districts organized under special acts, the manner of levying taxes for school purposes in such districts, but that question is covered by section 2 of said act, which reads as follows: "All money necessary for the purposes mentioned in section 1 of this act shall be raised as now provided by law, not to exceed the

amount by law limited, and shall be held ·by the treasurer as a special fund for school purposes, subject to the order of school inspectors, upon warrants to be countersigned by the mayor and city clerk." The question therefore arises, what is the signification to be given to ·the·language found in said section that all money necessary for the purposes mentioned in said section 1 "shall 'be raised as now provided by law?" We think by the words "now provided by law" the legislature referred to the law in force providing· for the raising of money for school purposes in such districts at the time the act of 1893 went into effect, which law, as applied to district No. 86, was found in chapter 11 of the act of 1857. This view is made clear, ·we think, by the last clause of said section 2, which regulates the method of drawing orders against said school funds when collected, by providing that the warrants drawn against said school fund shall be countersigned by the mayor and city clerk. If the fund was not, as theretofore, to be raised upon a tax levy made by the city council and to be held by the city treasurer, why should it have been provided by the legislature that warrants drawn upon the school fund should be countersigned by the mayor and city clerk? If the school funds in such school districts, when collected, were to be paid to the township school treasurer, it would be a useless safeguard to provide that when warrants were drawn against said funds they should be signed by officers of the city who have no knowledge of the condition of the school fund or connection with the officer who holds the same. If, however, the tax levy was to be made by the city council and the funds were to be held by the city treasurer when collected, the mayor and city clerk might properly be required to countersign the warrants before they should be paid by the city treasurer out of the funds under his control held for school purposes. The act of 1857 confers the taxing power in said district, in express terms, upon the city council of the city of Joliet. In order to deprive said city council of such power a resort must be had to a repeal

of the statute which confers such power upon the city council, by implication, and to sustain that power in the board of school inspectors it must be conferred upon such board by construction.

The taxing power should not be held to exist in a body seeking to exercise such power unless the power is conferred upon such body in clear and unequivocal terms, and as that power has not been conferred upon the board of school inspectors of said district in that manner it must be held not to exist in such body but to remain in the city council, where it is placed by the act of 1857.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*