## William A. Gray v. Board of School Inspectors of Peoria et al.

### Gen. No. 4,847.

1. SCHOOL TRUSTEES—*power of, to borrow money.* School trustees organized under special act of the legislature who have power to determine the amount of taxes required and have the same levied by the city council, have authority by virtue of section 2 of the act of May 11, 1901, to borrow money in anticipation of the collec-tion of such taxes.

2. SCHOOL TRUSTEES—*form of orders of, for money borrowed un-der section 2 of act of May 11, 1901.* Where money is borrowed pursuant to section 2 of the act of May 11, 1901, the orders issued should not be made payable outside of the state, and they should state directly upon their face that they are payable solely from current taxes to be collected. Such orders are not negotiable so as to entitle the holder thereof to protection under the laws relat-ing to bills and notes.

3. INJUNCTION—*when does not lie to restrain payment of school orders.* Injunction will not be awarded to restrain the payment of school orders, although irregular and contrary to statute in form, if the money thereon was obtained, the taxes out of which they were payable have been collected, and the orders themselves have matured.

Bill in equity. Appeal from the Circuit Court of Peoria county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

**Statement by the Court.** On July 20, 1906, William A. Gray filed a bill in equity against the Board of School Inspectors of the city of Peoria, its president, secretary, treasurer and financial committee, and against the Charter Oak National Bank of Hartford, Connecticut, and the Aetna Life Insurance Company, of Hartford, Connecticut, to enjoin the payment and collection of three orders for $25,000 each issued by said school board. The person named as treasurer filed a disclaimer stating that she had been succeeded in that office by another person and had turned over to her successor all funds, etc., and had no further interest in the suit. The others filed various demurrers to the bill. These demurrers were sustained. Complainant then by leave of court filed an amended bill, to which said disclaimer and demurrers were refiled. The demurrers were sustained and the bill was dismissed for want of equity. This is an appeal by complainant from that decree.

The amended bill, hereinafter called the bill, alleged that complainant was a taxpayer and resident of the city of Peoria and the owner of taxable property therein; that said board of school inspectors is a body corporate created by a special act of the General Assembly in 1869 therein declared to be a public law; that the powers and duties of said board are set forth in said act, and that it has never had authority to borrow money or issue any obligation therefor for any purpose whatever; that notwithstanding said lack of authority said board at a regular meeting on September 4, 1905, attempted to authorize its finance committee to borrow such sums as might be necessary to meet the current expenses of the board, and that its proceedings appear upon its official record as follows:

"Inspector Bailey, Chairman of Committee of Finance, reports all time obligations of the Board paid and the Board for the first time in seven years wholly free from debt. He said it would be necessary to borrow money in anticipation of the taxes levied for 1905 in order to meet the current expenses of the Board and offered a resolution authorizing the Committee to borrow such sums as are necessary—the sums to be repaid on or before August 1, 1906. Inspector Keene moved the adoption of the resolution and on call of ayes and nays it was unanimously adopted."

The bill further averred that, in pursuance of said resolution and without any further authority, the finance committee on November 11, 1905, borrowed for said board from said Charter Oak National Bank $25,000, which sum was paid over to the treasurer of the board and expended by the board, and that without any further authority an order was issued to said bank for said sum borrowed by the president and secretary of the board and chairman of the finance committee.

The following is alleged to be a substantial copy of said order:

"No. 576.     PEORIA BOARD OF SCHOOL     $25,000.
INSPECTORS.
Interest Bearing Scrip

Issued in antici-     Authorized at regular
pation of taxes of 1905.     meeting of Board.
Dated November 11, 1905.     9-4-05.

On or before September 1st, 1906, the treasurer of said Board will pay to the order of the Charter Oak National Bank of Hartford, Conn., Twenty-Five Thousand Dollars at the office of said Bank in Hartford, Conn., with interest from date at 4½ per cent per annum, payable semi-annually.

B. MEALS, President.
I. N. MARTIN, Secretary.
C. J. BAILEY, Chairman Finance Committee."

The bill contained like averments of a loan for $25,-

000 from the Aetna Life Insurance Company on December 15, 1905, under the same authority, and the receipt of the money and its expenditure by the board, and of the issuing of a like order of that date payable to said insurance company at Hartford, Connecticut, and like allegations in regard to another loan of $25,000 from said insurance company on January 20, 1906, and of the receipt of that sum by the treasurer and its expenditure by the board, and of the issuance of a like order of it of that date.

The bill also alleged that on June 4, 1906, at a meeting of said board the following resolution was adopted by a unanimous vote on a call of the yeas and nays:

"Whereas: According to the books of the school board the present indebtedness of said board appears to be as follows:

| | |
|---|---|
| Aug. 1, 1904, Savings Bank of Peoria, 5 per cent. | $10,000.00 |
| Sept. 8, 1905, T. A. Sullivan, 4 per cent. | 40,000.00 |
| Nov. 11, 1905, Charter Oak Bank, Hartford, 4½ per cent. | 25,000.00 |
| Dec. 1, 1905, Aetna Life Insurance Company, 4½ per cent. | 25,000.00 |
| Jan. 20, 1906, Aetna Life Insurance Company, 4½ per cent. | 25,000.00 |
| Mar. 6, 1906, Central National Bank, 5 per cent. | 6,000.00 |
| | $131,000.00 |
| Interest to June 1, 1906, | 2,990.96 |
| Interest to July 1, 1906, | 248.25 |
| | $134,472.21 |

"Therefore be it resolved that the president and secretary of the board be and they are hereby authorized to pay said notes on or before July 1, 1906, when properly approved for the payment by the Finance Committee.

D. M. MAYER,
Chairman of the Finance Committee."

The bill does not refer to the error in addition in

the statement embodied in said resolution. The bill then averred that said sums of $40,000 and $6,000 had been paid by the school board in pursuance of said resolution, and contained no averment as to the sum of $10,000 therein mentioned. It further averred that said three items of $25,000 each, ordered to be paid by said resolution, represent the money borrowed in pursuance of the resolution of September 4, 1905, and are the same sums for which the three orders above referred to were issued, and that in pursuance of said resolution the finance committee is about to approve said three sums of $25,000 each for payment, and an order is about to be signed by the president and secretary of the board directing the treasurer to pay said three sums of $25,000 each, and that said orders when drawn will be paid by the treasurer to the great detriment of the taxpayers. The bill sought to enjoin the school board from taking any further steps towards the payment of said moneys, the president and secretary from signing any orders therefor, the finance committee from approving the same and the treasurer from paying them, and asked that said orders be declared illegal and void, and that they be cancelled, and that the bank and the insurance company be enjoined from bringing suit for the recovery of said moneys.

The powers of said school board are found in chap. 13 of the charter of the city of Peoria in the private laws of 1869, said chap. 13 being on pages 168 to 174 of vol. 2 of said private laws. The fourth power there given is: "To establish, support and maintain public schools for all the children of the city, and determine the rate of taxation for school purposes in the manner hereinafter provided." The tenth power is as follows: "And generally to have and possess all the rights, powers and authority necessary for the proper management of the schools and the fund belonging to the city for school purposes, with power to make all such rules and ordinances as may be necessary to carry

their powers and duties into effect, and perfect a good system of public instruction and schools in said city." Sec. 12 of said chap. 13 is as follows: "On or before the first Tuesday in August of each year, the board of inspectors shall determine the amount of money which, in their opinion, will be required to be raised by taxation for the support of the public schools of the city the ensuing year, and notify the city council of the rate of tax to be levied and collected for that purpose, as provided by the second clause of chap. 7 of this act, not exceeding the percentage authorized by said clause, and the amount so reported to the city council shall be levied and collected in the same manner and at the same time as other city taxes, and when collected shall be paid over to the treasurer of the board." By the second paragraph of sec. 1 of chap. 7 of said charter of the city of Peoria, its city council is given power "To annually levy and collect a tax, not exceeding six mills on the dollar on all taxable real and personal estate in township eight (8) north, range eight (8) east, in Peoria County, made taxable by the laws of this state, to meet the expenses of repairing school houses and supporting and maintaining schools."

Chap. 146 of the Revised Statutes as it read prior to 1901 was the act of May 31, 1879, which provided for the manner of issuing warrants upon the treasurer of school districts and other municipal corporations. By the act of May 11, 1901, sec. 2 of that statute was amended to read as follows: "That whenever there is not sufficient money in the treasury of any county, city, town, village, school district or other municipal corporation to meet and defray the ordinary and necessary expenses thereof, it shall be lawful for the proper authorities thereof to provide a fund to meet said expenses by issuing and disposing of warrants drawn against and in anticipation of any taxes already levied by said authorities for the payment of the ordi-

nary and necessary expenses of such county, city, town, village, school district or other municipal corporation, to the extent of seventy-five per centum of the total amount of any such tax levied: *Provided,* That warrants drawn and issued under the provisions of this section shall show upon their face that they are payable solely from said taxes when collected and not otherwise, and shall be received by any collector of taxes in payment of the taxes against which they are issued, and which taxes against which said warrants are drawn shall be set apart and held for their payment.''

RICHARD H. RADLEY, for appellant.

H. C. FULLER, OLIVER J. BAILEY and DAVID McCULLOCH, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

It will be conceded for the purposes of this decision that under the act of May 31, 1879, contained in the Revised Statutes of chap. 146a, as it was prior to the amendment of May 11, 1901, the school board was not authorized to borrow money or issue warrants under such circumstances as are shown in this case. Strodtman v. County of Menard, 56 Ill. App. 120. But the amended sec. 2 of said act greatly enlarges the powers of the municipal corporations therein named, including school corporations. It enacts that when there is not sufficient money in the treasury of the corporation to defray its necessary expenses, its authorities may provide a fund to meet said expenses by issuing and disposing of warrants drawn against and in anticipation of taxes already levied by said authorities for such necessary expenses, to the extent of seventy-five per cent. of the tax so levied, but requires the warrants to show that they are payable solely from said taxes when collected and not otherwise, and requires the taxes

against which the warrants are drawn to be set apart for their payment. The school authorities are by that amendment authorized to obtain a fund by issuing and disposing of warrants drawn against a tax already levied. We hold that this authorizes the school authorities to sell such warrants for cash, or, in other words, to borrow money, to meet the necessary expenses of the schools, after a tax has been levied for said expenses, and to the extent of seventy-five per cent. of such tax levy previously made. It is insisted that under the provisions of the charter of the city of Peoria above set out, it is the city council and not the school board which levies the taxes. It is the school board which determines the amount of money required to be raised by taxation for the support of the schools for the ensuing year. It notifies the city council of such amount and of the rate to be levied, and the city council is then required to levy and collect such amount with the other city taxes. No discretion seems to be given the city council as to the amount to be levied. The school board fixes the amount, and can no doubt compel the council to levy that sum. In this respect it differs from the provisions of the special charter of the city of Joliet (Private Laws of 1857, 188, 219), which were under discussion in People ex rel. v. Mottinger, 215 Ill. 256, for by that charter the city council possessed practically all the powers which by the Peoria charter are conferred upon its board of school inspectors. It is the school board only which can issue warrants payable out of school funds in the hands of the school treasurer. If this school board cannot issue the warrants provided by said amended sec. 2 of said chap. 146a of the statutes, because it does not directly but only indirectly levy the school taxes, then this particular school corporation is excluded from the benefits of said amended section. We do not think the legislature intended such discrimination between school authorities. We think this school board is

within the spirit and intent of the statute. We there-
fore conclude that the board of school inspectors of
the city of Peoria is one of the school corporations
which by said sec. 2 as amended May 11, 1901, are au-
thorized to issue and dispose of warrants, against a
tax already levied, to provide a fund for the necessary
expenses of the schools. It is not alleged in the bill
that a tax had not been levied to meet said expenses,
nor is it claimed that the board issued orders in excess
of seventy-five per cent. of such tax.

These orders are irregular. The board possessed
no authority to make them payable outside of this
state. They do not directly state upon their face that
they are payable solely from said taxes when collected,
but only that they are "issued in anticipation of taxes
of 1905." In County of Coles v. Goehring, 209 Ill.
142, which arose under this section as it read prior
to said amendment, it was held that warrants which
recited that they were "to be paid out of any moneys
in the county treasury not otherwise appropriated"
were invalid because they did not show upon their
face that they were payable solely from taxes already
levied, and the court there said: "They can only be
drawn and issued against and in anticipation of the
collection of the taxes already levied, and must so
show upon their face." It will be seen that these
orders, by the words contained in them "issued in an-
ticipation of taxes of 1905" complied at least in part
with the language of the Supreme Court above quoted.
"Anticipation" means "use in the present of what is
to accrue;" "dealing with income before it is due."
Anderson's Law Dictionary. The language of these
orders implies that the treasurer of the school board
is to pay them out of the taxes of 1905, and that meant
out of school taxes only, for he could receive no other
taxes as treasurer of the school board. We regard
these instruments therefore, not as wholly void for
want of power, but as a defective execution of the

power granted to the school board. By the resolution of June 4, 1906, the school board, by a unanimous vote upon a call of the yeas and nays, ratified said orders.

These orders are not negotiable so as to entitle the holder thereof to protection under the law relating to bills and notes. Morrison v. Austin State Bank, 213 Ill. 472. The amended bill also was filed after they were all past due. The bill showed that the school board through its treasurer received the money and that the board has expended it. In the absence of allegation we must presume that it was expended for the necessary expenses of the public schools and for those purposes for which a tax had previously been levied. In the absence of allegation we must presume that when this bill was filed said tax had been collected and was then in the hands of the school treasurer, and that the board intended to pay said orders out of said tax. We do not feel called upon to decide whether these orders can be collected by suits at law. It is sufficient for the purposes of this suit to say that in our opinion it is not equitable that the school board should be enjoined from paying back out of the proper taxes the moneys so borrowed in anticipation of their collection, and in partial compliance with the provisions of said amendatory act of May 11, 1901. There is no fact alleged which places the school board or the taxpayers in a different or worse position from that which they would have occupied if these orders upon their face had been made payable solely from said taxes, in strict compliance with every detail of said act of 1901.

We see no reason why a court of equity should enjoin the board from making payment now, in exactly the manner in which it would pay if it had fully expressed in these warrants the limitations imposed by the act under which they were issued.

The decree is therefore affirmed.

*Affirmed.*